19702. MINOR *et al. v.* FINCHER *et al.*

ARGUED MAY 14, 1957—DECIDED JUNE 10, 1957—REHEARING DENIED JULY 3, 1957.

366

*Reuben A. Sumner, Harry A. Crawley, W. J. Wallace,* for plaintiffs in error.

*Martin, Snow & Grant, Holleman, Adams & Dallas, Harris, Russell, Weaver & Watkins,* contra.

WYATT, Presiding Justice. (We will refer to the parties in this opinion as they appeared in the court below.) It is contended by the defendant that the plaintiff failed to prove the location of the land from which she alleges that the defendant cut timber and failed to prove the amount of timber cut from land claimed by her. In the instant case, as in the former case, the plaintiff undertook to prove the location of the land claimed by her by Burrus Smith, a surveyor, and by a plat prepared by him; and to prove the amount of timber cut by W. A. Gordy, who cruised the timber on land pointed out by Smith. In this respect, the instant case is identical with the former.

In *Minor v. Fincher,* 206 *Ga.* 721 (58 S. E. 2d 389), this court held that the survey made by Smith and Smith's testimony upon the trial with reference to the location of the lot lines involved were hearsay and without probative value because Smith used as a starting point a position pointed out to him by one J. C. Cochran, who did not testify upon the trial. It was further held that the official survey of Crawford and Upson Counties disproved any contention that the survey and plat made by Smith was correct.

Upon the trial of the instant case, Smith testified that he had made another survey of the lands in question and had prepared a new plat. He testified that his second survey disclosed no discrepancy in his first survey. However, a simple comparison of the two plats will reveal that there are material differences between them. For instance, in his second survey, Smith has moved the Crawford County-Upson County line westward a considerable distance. He has labeled the county line shown on

his second plat as "not located by survey." This did not appear on his first plat. On his first survey, Smith showed Auchumpkee Creek as entering the south line of lot No. 264 about a quarter of a land lot east of the west line of the lot and running northerly through lot 264 and 263 and out of 263 near the northwest corner. On his second survey, Smith has moved the creek west about a quarter of a land lot so that it does not now enter the south line of lot 264 at all, but enters 264 about a quarter of a land lot up the west line of lot No. 264; runs northerly through lot 264 and into lot No. 263, and then out and in the west line of lot 263 all the way to the northwest corner of lot 263. Smith has added in his second survey an old house site with a chimney and an old road cutting the north line of 263.

A comparison of the second plat with the official survey which was duly certified and introduced in evidence will, as was the case upon the former appearance, "disprove any contention that the surveyor's plat is correct." Auchumpkee Creek as shown on Smith's plat does not at all correspond to the creek as shown on the official survey. On the official survey, Auchumpkee Creek enters the west line of lot No. 264 over one-half a land lot from the southwest corner of the lot and then runs northeasterly through the lot and into the south line of lot No. 263 and then northwesterly out the west line of 263 about a quarter of a land lot from the southwest corner of lot 263 and then along the lot line to a point about a quarter of land lot south of the northwest corner of lot 263 where it leaves the west line of lot No. 263 and runs northwesterly, never coming near the west line of lot 263 again. Among other things as pointed out above, Smith's plat shows the creek going in and out of the west line of lot 263 all the way to the northwest corner of said lot and in fact, the creek is shown as entering the northwest corner of lot 263. Furthermore, the official survey shows a road labeled as Booth's Road crossing the northwestern corner of lot 263. The evidence was uncontradicted that such a road existed and that it was a public road over which school busses traveled. No such road appears on Smith's plat. The road shown cutting the north line of lot 263 on Smith's plat was, according to his own testimony, only a logging road. Smith has shown the county line in his second plat

as running at a place different from that shown on his first survey and at a place contrary to the testimony of every witness who testified, although he shows that he did not survey it and testified that he did not know where it ran.

Upon the trial of the case, Smith testified that he talked to a number of people who pointed out to him the lines of the C. W. Rickerson place, which it is contended consisted of lots 263 and 264. He further testified that he did not know of his own knowledge anything except what was pointed out to him by the people there as being the Rickerson place; that "they" showed him certain lines there; that "they" said these were the lines of the Rickerson place. He further testified, "Q. You say 'they' showed you. Who showed you? A. People I talked to. Q. Can you name any of them? A. I would say Mr. Cochran is one, Mr. Brown Walker, I don't remember who else."

When this case came on for trial, Mr. Cochran, above referred to was dead. A portion of his testimony from the former trial was introduced in evidence. He did not undertake in the portion of the testimony introduced to testify as to the accuracy of the plat made by Smith. Mr. Brown Walker testified upon the trial of the instant case. He testified that he assisted Mr. Smith in making a survey by pointing out the north line of the Rickerson place; that he did not know anything about the line between the two lots, but that Smith later came back and ran one. Walker then undertook to testify as to the accuracy of Smith's plat. The only conclusion that can be reached from Walker's long and conflicting testimony is that the boundaries of the Rickerson place as shown by Smith's plat differ considerably from the boundaries as he had always known them to be. He insisted, however, to the end that Smith's plat was correct, even though it differed from his own knowledge of the place over a long period of years. The only basis for his belief now that Smith's plat is correct is his confidence in Smith's ability as a surveyor. However, Smith, being unfamiliar with the lines of the Rickerson place was dependent upon information supplied by those who were familiar. One of those persons, and the only person who testified, was Mr. Brown Walker and he testified to facts which positively show that the plat is not in accordance with what

he had always known the Rickerson place to comprise.

It is obvious that either Smith's plat is incorrect or that Mr. Walker did not know where the lines of the Rickerson place were and was not a person upon whom Smith could rely for information as to the location of the lines. This kind of testimony can lend no probative value to the testimony of Smith or to the plat prepared by him. None of the other people with whom Smith talked about the lines of the Rickerson place, or the starting point for his survey, or the lot lines, that he ran to the Rickerson place testified. Under these circumstances, the instant case, just as the former case, falls within the rule stated by the Court of Appeals in *Patterson* v. *Baugh*, 56 *Ga. App.* 660 (2) (193 S. E. 364) as follows: "A surveyor's plat, identified by a surveyor, was insufficient to establish the boundaries and location of a parcel of land where its correctness was based on the location of a lot corner, the location of which was not known to the surveyor but pointed out to him by living adjoining owners who did not testify."

Since there was no competent evidence as to the location of the boundaries of lot No. 263, there was no evidence as to the location of the land in question and no competent evidence upon which the jury would be authorized to base its findings as to the amount of timber cut from lot 263. It was, therefore, error to deny the motion for judgment notwithstanding the verdict.

Since the rulings above made will dispose of the case, it becomes unnecessary to pass upon the other questions raised by the bill of exceptions in this case.

*Judgment reversed with direction that judgment be entered in accordance with the motion. All the Justices concur.*