## A90A0113. WISENBAKER v. WARREN et al.
### (396 SE2d 528)

COOPER, Judge.

In an effort to resolve a boundary dispute, appellees, who are adjacent landowners, filed suit against appellant, also an adjacent landowner, after appellant erected a fence which allegedly encroached on appellees' property. The case was tried before a jury which found in favor of each of the appellees awarding general damages, attorney fees and litigation costs. The court ordered further that appellant remove the fence and be restrained from further trespass and adjudged that the boundary lines would be as shown on the survey prepared by Folsom as contended by appellees. Appellant appeals the denial of his motion for new trial. Appellees request that upon affirmance, the case be remanded for a determination of additional attorney fees incurred in defending this appeal pursuant to the verdict.

A review of the record indicates that the Folsom survey was one of several surveys performed on the property. In 1969, when appellees' predecessor in title, Ronald Wisenbaker ("Ronald"), purchased a 14.18 tract which included the property in dispute, a survey was conducted by Branch. Three years later when Ronald subdivided his property, Ganas was retained to do a subdivision plat. Appellees Warren and Ellis purchased their lots in 1979 and 1980 respectively, although it appears Warren had occupied his property since 1972. In 1983, Fitzsimmons surveyed the lot purchased by appellees Billy and Beatrice Latham ("Lathams"). Appellant hired Kendall in 1983 and Connell in 1984 to survey the northern boundary of his property. Then in 1987, appellant petitioned the probate court for a processioning of the boundary lines between his property and that property belonging to appellees. The county processioners retained Connell to prepare a plat reflecting their survey. Finally, pursuant to a prayer in appellees' complaint, the Folsom survey was performed in September of 1987 at the trial court's direction.

Appellant's property was situated south of Warren and Ellis and east of the Lathams and Ellis. The fence was erected along the lines established by the processioners which appellees alleged encroached on their property by approximately 25 feet at the southern boundary of Warren and Ellis and sixteen hundredths of a foot at the northeast corner of the Lathams increasing to 2.73 feet at the southeast corner of Ellis along eastern boundary as demonstrated by the Folsom survey. Folsom testified that he referred to the Branch, Ganas and Fitzsimmons surveys in preparing his own survey. While the surveys did

differ, Kendall testified that the variations were not considerable. In addition, both Branch and Connell testified that they agreed with the Folsom survey.

Appellant contends the Folsom survey is flawed because it relies on the wrong landmark in establishing the corners and lines of appellees' property. Specifically, appellant contends that the marker in the northeast corner should have been placed in a creek, whereas Folsom testified that this location was unreliable in that the flow of creek had changed. Folsom's testimony demonstrated the process he used in determining the boundaries and corners. He indicated that his results complied with those of previous surveys. Additionally, in the disputed area, Folsom observed use by Warren and Ellis consistent with ownership.

1. Appellant contends the court erred in overruling his motion for new trial on general grounds. "The general rule is that a jury verdict, after approval by the trial court, will not be disturbed on appeal if it is supported by any evidence. [Cits.]" *Smith v. Clifford H. Pryor & Assoc.*, 193 Ga. App. 523, 524 (388 SE2d 383) (1989). Here, there was ample evidence to authorize the jury to find the boundary lines were those demonstrated by the Folsom survey; therefore, the trial court did not err in overruling appellant's motion for new trial. See also *Mullis v. Baker*, 112 Ga. App. 879 (146 SE2d 788) (1966).

2. Appellant also contends there was insufficient evidence to support the jury verdict for damages and litigation costs. Appellant argues that he was entitled to rely on the property line established by the processioners inasmuch as appellees failed to protest the processioners' return. OCGA § 44-4-9 provides that "[a]ny owner of adjoining lands, who is dissatisfied with the lines run and marked by the processioners and the surveyor *may* file his protest to their findings with the judge of the probate court within 30 days after the processioners have filed their returns. . . ." (Emphasis supplied.) The language is not mandatory and no protest having been filed, the processioning acquired no res judicata effect. *Holmes v. Blount*, 245 Ga. 757, 758 (267 SE2d 228) (1980). Furthermore, " '[w]here processioners have duly made out and certified a plat as required by law, and no protest is filed to the same, such plat and the lines marked thereon are only prima facie correct.' [Cits.]" *Huff v. Holley*, 101 Ga. App. 292 (3) (113 SE2d 493) (1960). Accordingly, reliance on the processioners' lines does not shield appellant from liability for trespass.

OCGA § 13-6-11 authorizes the jury to award expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Appellees' complaint was for "trespass, an intentional tort, which tort will support a claim for expenses under the theory that the intention evokes that 'bad faith' necessary for recovery under OCGA

§ 13-6-11. [Cit.] There was evidence of the intentional building of a fence by [appellant] on [appellees'] land. This was sufficient for the jury to consider the issue. The fact that there was a dispute as to the location of the land line did not justify the building of the fence." *Tanner v. Gilleland*, 186 Ga. App. 377 (3) (367 SE2d 257) (1988). Additionally, an award of such expenses "should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense. [Cit.]" *Ken-Mar Constr. Co. v. Bowen*, 245 Ga. 676, 677 (266 SE2d 796) (1980). The evidence demonstrated that appellant persisted in attempting to impose on the parties property lines which were contrary to six surveys. He witnessed without objection appellees' use of the disputed area, by mowing its grass, digging a well on it, and placing a dog house there. Appellant also testified that he had seen markers along the timber line. For the reasons stated above, appellant's defense was not reasonable, the trial court did not err in allowing the jury to consider the matter and the evidence supported the verdict of the jury.

3. Appellant enumerates as error the trial court's denial of his motion for directed verdict on the issue of adverse possession by appellees under color of title for seven years. OCGA § 44-5-164 provides that possession of real property under evidence of title for seven years shall confer good title by prescription where that possession is public, continuous, exclusive, uninterrupted, peaceable, and accompanied by a claim of right. Appellant argues that appellees were not in possession of their tracts for seven years and that appellees could not tack the earlier possession of Ronald because he did not possess under a claim of right. The record reveals that Warren and Ellis acquired title in 1979 and 1980 respectively and therefore, had possession for seven years by 1987. "Possession under a duly recorded deed will be construed to extend to all the contiguous property embraced in the deed." OCGA § 44-5-167. The Lathams acquired title in 1983 from Ronald, whose title goes back to 1969. "An inchoate prescriptive title may be transferred by the possessor to a successor, so that the successive possessions may be tacked to make out the prescription. [OCGA § 44-5-172] . . . [T]he burden is upon [appellees] to show by a preponderance of the evidence that this prior possession was of such character as to be the foundation of prescription, and be adverse. The foundation must meet all the requirements of [OCGA § 44-5-164], and among these requirements, the possession must be accompanied by a claim of right. 'While this does not mean that the possession must be accompanied by a claim of title out of some predecessor, it does mean that there must be some claim of title in the sense that the possessor claims the property as his own.' [Cit.]" *Olsen v. Noble*, 209 Ga. 899, 904 (76 SE2d 775) (1953). Appellant contends Ronald could not have had possession under a claim of right and in good faith be-

cause he purportedly knew the "true" property lines and destroyed them. The evidence showed that Ronald's use of the property for nearly twenty years as of 1987 was consistent with the survey performed at the time of his purchase. "A presumption of good faith arises from adverse possession. [Cits.] 'If a person buys land in good faith, believing he is obtaining a good title, and enters into possession thereof, and remains there . . . for seven years, that possession ripens into a good title. . . .' [Cit.]" *Fraser v. Dolvin*, 199 Ga. 638, 640 (34 SE2d 875) (1945). Accordingly, the trial court did not err in denying the motion for directed verdict.

4. Appellant contends the trial court erred in allowing Ronald to testify as to where he understood the lines to be at the time of purchase and as to the contents of an unrecorded sales contract. We disagree. "We find no error in admitting the testimony which was offered to show the witness' general knowledge of the area, and to lay a proper foundation for the witness' subsequent testimony setting the boundary line in dispute based on [his] general understanding. . . ." *Sackett v. L. L. Minor Co.*, 244 Ga. 375 (3) (260 SE2d 37) (1979). In addition, "[t]he decision to allow the witness to testify rested within the sound discretion of the trial judge. [Cit.]" Id. at 376.

The 1972 sales contract between Warren and Ronald was not admitted because it had not been produced in response to interrogatories, nor was it listed in the pre-trial order, however, on cross-examination of Ronald, the court did permit questions concerning the contract. The court found the testimony relevant evidence of how and when title was obtained relative to adverse possession. "Admissibility of evidence is a matter which rests largely within the sound discretion of the trial court, and if an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible." (Punctuation omitted.) *Kittles v. Kittles*, 187 Ga. App. 537 (1) (370 SE2d 803) (1988). Appellant contends the trial court erred in allowing testimony concerning the contract after refusing to admit it. We find that the trial court did not abuse its discretion in allowing the relevant testimony.

5. Appellant enumerates as error the charge to the jury as to the validity of the processioning and punitive damages. Appellant first contends that the trial court erred in allowing the jury to consider the validity of the processioning proceeding. As explained above in Division 2, appellees are not precluded from protesting the return of the processioners because of their failure to protest to the probate court. While the processioners' return is prima facie correct, "[I]f protestant's contention is supported by some competent evidence, the court must submit the issue to the jury. [Cit.]" *Overstreet v. Dixon*, 107 Ga. App. 835 (3) (131 SE2d 580) (1963). A review of the record reveals such competent evidence; therefore the trial court did not err in al-

lowing the jury to pass on the validity of the proceedings.

The charge in substance provided for an award of punitive damages if the jury found the processioning was a sham or commenced in bad faith, or in an effort to be stubbornly litigious or to cause the appellees unnecessary trouble and expense. Appellant contends that there was no evidence of sham, fraud, or bad faith and that the use of the word "sham" denied due process. The grounds stated in the charge, if found, would support a claim for expenses of litigation under OCGA § 13-6-11 but not punitive damages. "To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. [Cit.]" (Punctuation omitted.) *Jones v. Padgett*, 186 Ga. App. 362 (5) (367 SE2d 88) (1988). At the conclusion of the charge appellant objected generally to all charges which he contended converted the case into an appeal from probate court. This "objection was not sufficiently specific to meet the requirements of OCGA § 5-5-24 (a), in that it did not direct the court's attention to the particular request to charge at issue, . . . so as to enable the court to rule intelligently on that specific point." *Hamrick v. Wood*, 175 Ga. App. 67 (1) (332 SE2d 367) (1985). However, we will consider and review the charge pursuant to OCGA § 5-5-24 (c) to determine if the giving of the charge was harmful as a matter of law so as to require a reversal. "To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial." *Hamrick*, supra. Viewing the charge to the jury in its entirety and not as single instructions in isolation, the giving of the erroneous charge was not harmful as a matter of law because later in the charge the court gave the correct charges for punitive damages and litigation costs. *Henderson v. Glen Oak, Inc.*, 179 Ga. App. 380 (4) (346 SE2d 842) (1986). The jury awarded general damages of $600 to Warren, $150 to Ellis and $150 to the Lathams. None of the appellees was awarded punitive damages, however they were all awarded litigation costs in an amount determined by the court as stipulated by the parties. This verdict is consistent with the evidence adduced at trial. "Though the true measure of damages may not have been given in charge, no new trial is required if the verdict does not exceed the amount of damages which should have been found had the charge been correct. [Cits.]" (Punctuation omitted.) *Southern Concrete Prods. Co. v. Martin*, 126 Ga. App. 534 (2) (191 SE2d 314) (1972). In addition, the use of the word "sham," while incorrect, was not blatantly prejudicial resulting in gross injustice. See generally *Hamrick*, supra.

6. With respect to enumerations of error 5, 6, 7 and 8, appellant

has not seen fit to support his contentions with specific citation of authority or argument. He requests that we allow him to adopt argument contained in his amended motion for new trial, however, that pleading contains no argument on these enumerations. Accordingly, they are deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). *Segrest v. Intown True Value Hardware*, 190 Ga. App. 588 (3) (379 SE2d 615) (1989).

7. The case shall be remanded pursuant to OCGA § 5-6-8 so that the trial court can consider the costs appellees have incurred in defending this appeal in accordance with OCGA § 13-6-11, the jury's verdict and the parties' stipulation.

*Judgment affirmed and case remanded with direction. Banke, P. J., and Birdsong, J., concur.*

DECIDED JULY 12, 1990 —
REHEARING DENIED JULY 30, 1990 — CERT. APPLIED FOR.

*Cork & Cork, Robert L. Cork, Patrick C. Cork, Griner & Alderman, Galen P. Alderman*, for appellant.

*William P. Langdale, Jr., James E. Jarvis, Jr.*, for appellees.