A98A1181. KDS PROPERTIES, INC. et al. v. SIMS.
(506 SE2d 903)

JOHNSON, Presiding Judge.

This suit arises from a petition for injunction and complaint for damages resulting from an alleged trespass onto Sims' land by KDS Properties, Inc. (KDS), a Georgia corporation, and Douglas Hinton. Hinton is the principal stockholder, president, vice-president, secretary, treasurer, and director of KDS. Following a hearing on a motion for interlocutory injunction, the trial court appointed the county surveyor to conduct an independent boundary line survey. After walking the property line and observing the monuments at issue, the county surveyor adopted the findings of Sims' surveyor and submitted his report to the trial court. After reviewing the surveyor's report and other evidence, the trial court granted Sims' motion for an interlocutory injunction to temporarily restrain KDS from certain construction-type activities on Sims' land.

At trial, the jury returned a special verdict, and judgment was entered which, inter alia: (i) established the true boundary line dividing Sims' and Hinton's property in accordance with a plat survey

admitted in evidence as P-3-A; (ii) awarded $16,722.50 in damages to Sims against KDS for trespass; (iii) awarded $36,864.94 in attorney fees and litigation expenses to Sims against KDS; (iv) awarded $1 in punitive damages to Sims against Hinton for trespass; and (v) restrained and enjoined KDS and Hinton from grading, bulldozing, leveling, cutting, destroying, or otherwise harming any of the trees and vegetation of the property. KDS and Hinton filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial. The motion for new trial was denied. The motion for j.n.o.v. was granted as to the punitive damage award against Hinton, but was otherwise denied. KDS and Hinton appeal from the judgment entered in favor of Otis Sims.

1. KDS and Hinton assert the trial court erred in striking that portion of the judgment pertaining to punitive damages because "the verdict and judgment against Appellant Hinton for punitive damages but no general damages was a void verdict" and the judgment had to be set aside in its entirety. They cite *H & H Subs v. Lim*, 213 Ga. App. 371 (444 SE2d 404) (1994) in support of their argument.

As a general rule, a verdict which is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside. The entry of such a judgment is a ground for granting a new trial. *H & H Subs*, supra at 372 (1). The verdict in this case, however, is substantially different from the verdict in *H & H Subs*. There the verdict had numerous defects, and this Court could provide no reasonable construction to uphold the verdict.

As to the trespass claim, the jury reached a verdict in favor of Hinton by awarding no compensatory damages against him. See *LDS Social Svcs. Corp. v. Richins*, 191 Ga. App. 695, 698 (2) (382 SE2d 607) (1989). No inconsistency in the verdict arises merely by holding KDS liable for the trespass claim while exonerating Hinton. The verdict, however, is inconsistent as to Hinton because he cannot be held liable for punitive damages when the jury did not award compensatory damages against him. This sole inconsistency was readily apparent on the face of the verdict, was readily recognized at trial by the parties and the trial court, and was easily separable from the remainder of the otherwise consistent verdict. The trial court remedied the inconsistency by setting aside the $1 punitive damage award, thereby protecting and effectuating the trial court's final judgment. A trial court has the constitutional power to enter an order, regardless of its nomenclature, "as necessary . . . to protect or effectuate its judgments." Ga. Const. of 1983, Art. VI, Sec. I, Par. IV.

After the verdict was announced, the attorneys for the parties informed the trial court that the punitive damage award could not be sustained. The trial court decided not to send the issue back to the

jury, after hearing the attorneys' differing views as to remedial options. The attorney for KDS and Hinton did not object to the trial court's ruling. Although the trial court invited the parties to put any additional arguments regarding the issue on the record, KDS and Hinton merely requested that the jury be polled and otherwise remained silent. Each juror confirmed that the verdict was the same as his or her verdict both during deliberations and at the time of announcement. The jury was then excused without objection. The parties by their conduct and silence acquiesced in the ruling of the trial court and in the dismissal of the jury without its reconsideration of the verdict. A party cannot complain of a verdict, judgment, ruling, or order that his own trial or post-trial procedure aided in causing. See *Perryman v. Rosenbaum*, 205 Ga. App. 784, 790 (423 SE2d 673) (1992).

2. KDS and Hinton assert that the "true boundary line" set by the jury is not supported by the evidence and violates law governing boundaries. We disagree.

The parties agreed on the location of the following two markers which are shown on all plats: (i) an iron stake locating the true point of beginning and (ii) the wagon axle or corner stake labeled "C." It is the line between these two marker points that is in dispute. KDS and Hinton maintained that the boundary line between the properties is a straight line between the true point of beginning and point C — the two stipulated markers. Sims contended that there exists an approximate 4.289-acre offset in the boundary line; that is, the true boundary line runs from the point of beginning to a point labeled B then to a point labeled D then to a point labeled A then to point C. The jury resolved this dispute in favor of Sims. Under the "any evidence" standard of review, it cannot be said that there was insufficient evidence to support the jury's decision. See *Martin v. Patton*, 225 Ga. App. 157, 160 (1) (483 SE2d 614) (1997).

Sims contends that the boundary line has been firmly established by iron pins, hedge rows, trees, a line gully, and fencing, and that his occupation of that land has been public, continuous, exclusive, uninterrupted and peaceable. The jury was instructed on the law regarding obtaining title by prescription. KDS and Hinton have enumerated no error in the charging of the jury, particularly as to boundary line determination. The jury was also correctly instructed on the following principles of law which apply to boundary determinations: (i) if the corners are established and lines are not marked, a straight line as required by plat shall be run, but an established marked line, though crooked, shall not be overruled; (ii) artificial boundaries include fences, roads, streets, and land lot lines; they are evidence of the points which landowners past or present had in mind in their contractual dealings with one another; (iii) all monuments

whether natural or artificial are deemed superior to courses and distances; the superiority of monuments over metes and bounds is limited to those which are referred to in the deed itself; (iv) courses and distances occupy the lowest grade instead of the highest in the scale of evidence as to the identity of land; and (v) boundaries may be proved by hearsay. See generally OCGA § 44-4-5 (3) and (4); *Martin*, supra at 162-165 (2); see also *Dover v. Pritchett*, 251 Ga. 842, 844 (309 SE2d 804) (1984).

Sims' surveyor testified as to the procedure used in conducting his survey. His prepared plat was submitted in evidence. His conclusions as to the boundary lines were supported both by an aerial photograph taken in 1939 and by the testimony of the court-appointed surveyor. This evidence, together with the testimony of Sammy Sims, Joann Sims Collins, and Jean Sims Smith, and documentary evidence, is sufficient to support the jury's verdict as to the true boundary line. See generally *Locke v. Vonalt*, 189 Ga. App. 783, 785 (1) (377 SE2d 696) (1989).

The case of *Minor v. Fincher*, 213 Ga. 365 (99 SE2d 78) (1957), relied upon by KDS and Hinton is distinguishable. There the lay witness who testified gave testimony substantially in conflict with the survey.

As noted, the jury also was instructed, without objection, as to acquiring title by adverse possession or prescription. See generally OCGA §§ 44-5-161; 44-5-164. Evidence was admitted showing that for over 20 years, the Sims family maintained a chicken house within the contested acreage. The old chicken house deteriorated, and a new one was built in 1966. The Sims family kept chickens in the building until about 1989. A fence had been used as a boundary for more than 20 years on a portion of the contested property. The fence was maintained by the Sims family commencing in the early 1960s and was replaced by them in 1972 or 1973. "Acquiescence for seven years by acts or declarations of adjoining landowners shall establish a dividing line." OCGA § 44-4-6. The jury was authorized to conclude that Sims obtained title to the contested acreage by prescription. See *Bell v. Owens*, 230 Ga. App. 826, 827 (1) (497 SE2d 591) (1998).

3. The trial court did not err in allowing the jury to enter an award for attorney fees and expenses of litigation against KDS under the provisions of OCGA § 13-6-11. The complaint averred and the jury found that KDS was liable for committing the intentional tort of trespass. This Court has previously held that the intentional tort of trespass will support a claim for expenses of litigation and attorney fees under OCGA § 13-6-11. The legal theory is that the intentional nature of the trespass gives rise to the bad faith necessary for such recovery. *Wisenbaker v. Warren*, 196 Ga. App. 551, 552 (2) (396 SE2d 528) (1990); *Tanner v. Gilleland*, 186 Ga. App. 377, 378 (3) (367 SE2d

257) (1988).

There was evidence that after the Sims family notified it that they claimed ownership, KDS intentionally entered and performed construction work on the land in question, including tree removal and grading. The fact that there was a dispute as to the location of the boundary line did not justify the construction work. This conduct alone was sufficient to create a jury issue as to the claim for litigation expenses. KDS elected not to pursue any form of legal recourse. It acted at its peril. See *Wisenbaker*, supra at 553; *Tanner*, supra; see also *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 223 (3) (493 SE2d 622) (1997).

The cases cited by KDS in support of its argument on this issue are factually distinguishable. They do not involve an intentional tort of trespass occurring after the tortfeasor has been notified that he is encroaching on property claimed by another.

4. KDS and Hinton contend that the trial court erred in failing to apportion attorney fees and litigation expenses because there was no evidence to support the award as against Hinton.

Following the charge to the jury, KDS and Hinton took exception to the charge regarding expenses of litigation on the sole ground that there was insufficient evidence as a matter of law to support a verdict in favor of Sims. This is the same general claim that KDS and Hinton asserted in a motion for directed verdict as to expenses of litigation. However, KDS and Hinton failed: (i) to submit a request to charge as to other litigation expenses, (ii) to object timely to the sufficiency of the verdict form for failing to address allocation of attorney fees and other litigation expenses, and (iii) to take a specific exception to the sufficiency of the jury charge as to allocation of attorney fees and litigation expenses. See generally *Simms v. State*, 223 Ga. App. 330, 332 (1) (477 SE2d 628) (1996). A party cannot ignore what he thinks to be an injustice, taking his chances on a favorable verdict, and complain later. See *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322, 324 (1) (297 SE2d 292) (1982).

To preserve this issue for appellate review, it should have been raised and ruled upon by the trial court before the jury was dismissed. It was not timely raised in the motion for j.n.o.v. or in the motion for new trial. "An issue not raised during the trial in any form calling for a ruling will not be considered by this court." *Sanders v. State*, 134 Ga. App. 825, 826 (1) (216 SE2d 371) (1975); see *Starr v. State*, 229 Ga. 181, 183 (1) (190 SE2d 58) (1972); *Chesser v. State*, 228 Ga. App. 164, 165 (1) (a) (491 SE2d 213) (1997).

Further, prior to charging the jury, the trial court asked if the attorneys were "comfortable as far as the verdict form is concerned" regarding expenses of litigation and attorney fees. The attorneys for KDS and Hinton responded affirmatively. This response was made

even though KDS and Hinton were aware that Sims' attorney had not submitted any charge request as to how the expenses and fees were to be apportioned and that the trial court was concerned about the evidence necessary to enable the court to apportion attorney fees. A party cannot complain of a result which he aided in causing. See *Perryman*, supra at 790; *Hawkins v. State*, 195 Ga. App. 739 (2) (395 SE2d 251) (1990).

Furthermore, the jury in effect apportioned the award of attorney fees and litigation expenses when it found that Hinton, in his individual capacity, was not liable for any compensatory damages, attorney fees, or litigation expenses, but that the corporate entity, KDS, was so liable. The verdict is consistent with the jury's implicit determination that the corporate shield protected Hinton from liability.

5. KDS and Hinton also contend the trial court erred in allowing the attorney fee award to stand as there initially was no binding fee agreement between Sims and his counsel.

OCGA § 13-6-11 does not specifically require that allowable litigation expenses be incurred pursuant to an existing oral or written contract. Such a requirement would not be compatible with existing law. Once the evidence supports a finding that a defendant has acted in bad faith, has been stubbornly litigious, or has caused unnecessary trouble and expense, as required by OCGA § 13-6-11, the jury may award reasonable attorney fees. All that remains to support such an award is evidence which establishes the reasonable hourly rate and the reasonable number of hours spent in preparing for and conducting the litigation. As discussed in Division 3, there exists evidence from which a finding of bad faith could be made.

The evidence, as construed to support the verdict and judgment, shows that this suit was brought by Otis Sims by and through his daughter and legal guardian, Jean Sims Smith. It is uncontested that the attorney's standard hourly rate was $175 per hour. Evidence was also introduced as to the number of hours billed by Sims' attorney. We also note that while examining the attorney regarding his fees, the attorney for KDS and Hinton made the following admission in open court: "I don't dispute the fact that $175 is not an unreasonable rate for an attorney of your experience, and that is not an issue right here."

The question of attorney fees under OCGA § 13-6-11 is a question for the jury. There exists some evidence to support the award. See generally *Sass v. First Nat. Bank &c.*, 228 Ga. App. 7 (491 SE2d 76) (1997) (any evidence standard). KDS and Hinton's fifth enumeration of error, as crafted, is without merit.

6. Sims' motion to remand this case for a determination of the costs incurred on appeal is denied.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

Decided September 16, 1998.

*Edward F. Danowitz*, for appellants.
*Charles A. Mullinax, Glynn R. Stepp*, for appellee.