A01A0332, A01A0333. BEASLEY et al. v. BEASLEY et al.; and vice versa.
(546 SE2d 871)

MIKELL, Judge.
This appeal involves a family dispute over land, a certificate of deposit, and stock originally owned by Jessie Beasley. All of the

---

events that spawned this litigation transpired in 1992. On March 17, Mrs. Beasley executed a will leaving her entire estate to her son Corbitt Beasley ("Corbitt") and only $100 to each of her three daughters: Francis Elizabeth Grace,[1] Velma Beasley Nail, and Helen Beasley Owings.[2] The next day, Corbitt transferred to his son, Doyle Beasley ("Doyle"), 2,500 shares of stock in Effingham Bank & Trust that had been issued to "Corbitt Beasley or Helen Owings." Earlier, on February 24, Corbitt had redeemed a $15,000 certificate of deposit that had been issued to "Corbitt Beasley or Helen Owings." Next, on April 13, Mrs. Beasley executed a warranty deed conveying her real property, a 238-acre tract and a 100.5-acre tract, to Corbitt's sons, Doyle and Craig Beasley ("Craig"), reserving a life estate for herself.

Five years later, in 1997, Mrs. Beasley sued Corbitt, Doyle, and Craig ("defendants"), alleging that Corbitt unlawfully converted the stock and certificate of deposit and that he obtained the warranty deed by fraud and mistake of fact. Grace, who was substituted as plaintiff in January 2000, filed an amended complaint alleging that Mrs. Beasley was incompetent when she executed the deed, was unduly influenced by the defendants, and was fraudulently induced into executing the deed. Grace sought to have the stock and certificate of deposit returned; to have the deed set aside; punitive damages; and an accounting of profits earned by the defendants on the real property. Just prior to trial, the court permitted Grace to join Owings as a real party in interest.

After hearing all of the evidence, the jury returned a divided verdict. The jury found that Mrs. Beasley was competent when she executed the deed conveying the real property to the defendants. However, the jury also found that Corbitt and Doyle converted the certificate of deposit and bank stock. No punitive damages were awarded. Judgment was entered on the jury's verdict. In Case No. A01A0332, Grace and Owings ("appellants") appeal the portion of the judgment that declares the deed valid. In Case No. A01A0333, defendants appeal the portion of the judgment decreeing that $19,251.15, funds representing the amount of the certificate of deposit plus interest, as well as the bank stock,[3] be placed in the names of Corbitt Beasley and Helen Owings. Finding no reversible error, we affirm.

## Case No. A01A0332

1. In their first enumeration of error, appellants contend that in

---

[1] Grace was appointed by the probate court as Mrs. Beasley's guardian in 1999.

[2] Mrs. Beasley's prior will, executed in 1984, provided for her four children equally.

[3] The stock is now held in Centry South Bank, Inc.

responding to questions asked by the jurors during their deliberations, the trial court improperly expressed an opinion as to what facts had been proved, in violation of OCGA § 9-10-7. However, having failed to object or move for a mistrial on this ground, appellants have waived appellate review of this issue.[4]

Appellants contend that the trial court committed "substantial error in the charge which was harmful as a matter of law," necessitating a new trial even in the absence of a proper objection, as contemplated by OCGA § 5-5-24 (c). " 'To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial.' "[5] A review of the charge, recharge, and responses to the jurors' inquiries reveals no error that rises to this level. It follows that appellants are not entitled to a new trial on this ground.

2. In their second enumeration of error, appellants argue that the trial court placed undue pressure upon the jury to reach a unanimous verdict. We disagree. After responding to a series of questions from the jurors, the trial judge instructed them that the parties had "been waiting for several years for a resolution of their problem. . . . They came up here for an answer." The court expressed its confidence that the jury would fairly decide the issues. Appellants' counsel stated that he "appreciated" this instruction.

The jury resumed its deliberations and then returned to the courtroom to ask additional questions. It became apparent that the jury was struggling with the issues. After the jury returned from lunch, the court inquired into its progress. The jury stated that it was divided nine to three on one issue, eleven to one on several other issues, and had reached a verdict on one issue. The court informed the jurors that it was pleased with their progress and endeavored to assist the jury by giving further instructions. Finally, the court stated: "Okay, then you're making real good progress. And so we'll ask you to go back and consider the issues. Oh sometimes it takes three or four days."

A JUROR: We've been here four.
ANOTHER JUROR: We hadn't been in the back four days though have we?
A JUROR: That's not going to change.
THE COURT: But try. These people need an answer. So go back and try for a little longer.

---

[4] *McNabb v. Landis*, 223 Ga. App. 894, 896 (3) (479 SE2d 194) (1996).
[5] (Citation omitted.) *Wisenbaker v. Warren*, 196 Ga. App. 551, 555 (5) (396 SE2d 528) (1990).

The jury retired to continue its deliberations. At that point, appellants' counsel objected that the court had placed undue pressure on the jury to reach a unanimous verdict. Noting the objection, the court stated it would permit the jury to deliberate for only a brief amount of time. The jury returned its unanimous verdict within approximately 40 minutes.

Appellants have no cause for complaint. Assuming, arguendo, that the court's initial instruction constitutes a modified *Allen* charge, appellants affirmatively consented to the charge. A party cannot ignore an alleged injustice at trial, take his chances on a favorable verdict, and complain on appeal.[6]

Moreover, the trial court's subsequent remarks were an appropriate exercise of its discretion. The jury did not announce that it was deadlocked. Its repeated return to the courtroom reflected more a need for the court's clarification of the issues than a deadlock. Nor did its total deliberation time reflect a true impasse. The jury deliberated from 3:05 p.m. until 4:50 p.m. on May 24, 2000, and reconvened the next morning at 9:00. A lunch break was taken, and the verdict was returned at 2:45 p.m. Upon being polled, the jurors each announced that they heard the verdict read, that it was the verdict rendered in the jury room, and that it was still their verdict. Accordingly, we find no evidence of coercion.

In addition, contrary to appellants' contention, the trial court followed the guidelines set out in *Thornton v. State*,[7] in which we held that

> it would have been better practice for the trial judge . . . to have inquired further into the nature of the jury's deadlock and to have given the jury additional instructions if, in the exercise of his discretion, he then believed such instructions were appropriate.[8]

The trial court did not abuse its discretion when it directed the jury to deliberate further.[9]

### Case No. A01A0333

3. In a single enumeration of error, defendants allege that the

---

[6] *Warbington v. State*, 267 Ga. 462, 463 (2) (479 SE2d 733) (1997); *State v. Griffin*, 240 Ga. 470 (241 SE2d 230) (1978) (a party who fails to object to a trial court's alleged improper comment at trial is estopped from raising an objection on appeal).

[7] 145 Ga. App. 793 (245 SE2d 22) (1978).

[8] Id. at 795.

[9] See, e.g., *Ga. Communications Corp. v. Horne*, 174 Ga. App. 69, 70 (4) (329 SE2d 192) (1985).

trial court erred in permitting the addition of Owings as a real party in interest, and that the judgment awarding Owings an interest in the certificate of deposit and stock is not supported by any evidence.

Normally, we would address both contentions out of an abundance of caution.[10] In this instance, however, defendants' brief fails to support the evidentiary challenge with reasoned argument, and it is deemed abandoned under Court of Appeals Rule 27 (c) (2).[11] Accordingly, we address only the first contention.

Defendants object to the addition of Owings as a party plaintiff on the ground that the four-year statute of limitation on the conversion claims had expired prior to her joinder.[12] However, defendants did not raise the issue of the statute of limitation either in their motion in limine opposing the joinder of Owings or during the pretrial hearing held on this issue. As the defendants failed to elicit a ruling from the trial court on the defense, it is waived.[13]

Defendants contend that they preserved the defense by pleading it in their amended answer, as permitted by OCGA § 9-11-15 (a).[14] However, we reiterate that defendants did not seek a ruling from the trial court, either before or after the verdict was rendered, on whether the statute of limitation barred the conversion claims. "[A] defendant has the obligation to bring this affirmative defense to the attention of the court at the proper time if he wishes to make an issue of it."[15]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 7, 2001.

*Salter, Shook & Craig, Jason A. Craig*, for appellants.
*D. Duston Tapley, Jr.*, for appellees.

---

[10] *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999); *Stubbs v. Ray*, 245 Ga. App. 785, n. 1 (539 SE2d 179) (2000).

[11] Nor will we consider arguments raised for the first time in a reply brief. See *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 780 (14) (403 SE2d 235) (1991).

[12] OCGA § 9-3-32.

[13] *Obi v. State*, 230 Ga. App. 476, 477 (3) (496 SE2d 556) (1998) (failure to obtain ruling on statute of limitation defense results in waiver).

[14] *Gober v. Hosp. Auth. of Gwinnett County*, 191 Ga. App. 498 (1) (382 SE2d 106) (1989). We note that the defense was preserved in the pretrial order, pursuant to OCGA § 9-11-16 (b), but this does not affect our decision.

[15] *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 643 (3) (507 SE2d 823) (1998) (defense of insufficient service of process waived); see also *Ware v. Fidelity Acceptance Corp.*, 225 Ga. App. 41, 42 (1) (482 SE2d 536) (1997).