A02A1445. BICKERSTAFF AUTOMOTIVE, INC. v. TSEPAS.
(574 SE2d 322)

PHIPPS, Judge.

Sharon Tsepas sued Bickerstaff Automotive d/b/a Peachtree Mitsubishi (Peachtree), Shawn Fowler, and Rufus Huff for fraudulently inducing her to lease a "new" car that actually had been wrecked and repaired.[1] The jury found in favor of Tsepas against Peachtree and awarded compensatory damages of $14,727.88, which included attorney fees, and punitive damages of $53,000. The jury did not assess liability against Fowler or Huff. Peachtree appeals, claiming that the trial court erred by (1) denying its motions for directed verdict and judgment notwithstanding the verdict because it had the right to tender a replacement vehicle to Tsepas; (2) refusing to give its requested jury charge that it had the right to tender a replacement vehicle to Tsepas; (3) denying its motion for j.n.o.v. because the verdict in favor of Fowler and Huff and against Peachtree was inconsis-

---

[11] *Marett Properties*, supra at 267.
[12] *Echols v. Edwards*, 185 Ga. App. 688, 690 (2) (365 SE2d 844) (1988).
[1] Tsepas also asserted claims for intentional infliction of emotional distress and violation of the Fair Business Practices Act, but those claims were dismissed before trial.

tent; (4) refusing to amend the judgment to eliminate the attorney fees awarded to Tsepas; and (5) denying its motion to reduce the punitive damages award. Finding no error, we affirm.

In April 1999, Tsepas went to Peachtree to lease a black Mitsubishi. Montero Limited. Fowler, a Peachtree salesman, told Tsepas that they did not have one on the lot but that he could get her one in a few days. Fowler had Tsepas sign the paperwork and trade in her car for a black Montero that had not yet been located. In the interim, Peachtree loaned Tsepas a white Montero that had already been driven over 5,000 miles. Tsepas was not interested in trading for the loaned vehicle because of the mileage.

Several days later, Fowler told Tsepas that he could not locate a black Montero but that a new white one had just been delivered. Mark Barton, Peachtree's general manager, told Fowler that the car's mileage was over 2,000 miles because it had come from a dealership in Florida. When Tsepas inquired about the mileage, Fowler relayed the information he had been given by Barton. That information was erroneous because the car had never been in Florida.

When Tsepas came in to see the car, she noticed that the grille was black instead of chrome. Fowler told her that not all Montero Limiteds were equipped with chrome grilles, but agreed to replace it for her.[2] Tsepas also noticed that there was paint on the bumper, but Fowler explained that the bumper may have been slightly damaged during shipping. Tsepas then asked Fowler and Peachtree's sales manager, Huff, if they were certain that the car had not been damaged. They both assured her that it had not been, and she agreed to lease the car.

That same day, Peachtree replaced the grille and removed the paint from the bumper, and Tsepas took the car home. She later discovered a towing receipt in the owner's manual and tried unsuccessfully to find out from the towing company and the police why the car had been towed. The car also began leaking fluid. Tsepas's boyfriend, who had been present during negotiations for the car, called and asked Fowler and Huff if the car had been damaged, and they both said "absolutely not." Tsepas then took the car to a collision repair shop for an assessment and confirmed that it had been damaged.

After Tsepas or her boyfriend notified Peachtree that they were bringing the car back because of the leaking problem, Fowler left a message on Tsepas's answering machine that he had checked the vehicle identification number and discovered that the dealership in Florida had not told them that the car had been wrecked. Fowler said

---

[2] In fact, a chrome grille was a standard option for that model year.

that they were getting a new black Montero Limited and offered to work out a deal with her on it.

When Tsepas returned the car to Peachtree, she delivered a letter to Barton informing him that she was rescinding the lease contract because the car had been wrecked. Peachtree accepted the rescission and returned Tsepas's down payment.

At trial, Huff testified that the car Peachtree leased to Tsepas had been stolen from the dealership, driven, wrecked, towed, repaired, and returned to the dealership. When it was placed back on the lot, there was no indication that the car had been damaged. Both Fowler and Huff testified that they did not know the car had been wrecked when Peachtree leased it to her.

1. (a) Peachtree claims that the Uniform Commercial Code applies to the lease transaction and that it was entitled to tender a replacement vehicle to cure the nonconforming nature of the car and avoid liability.

Fraud renders a contract voidable at the election of the injured party.[3] A party claiming that she was fraudulently induced to enter a contract has the option to rescind the contract after discovering the fraud and to sue in tort to recover the contract's consideration as well as any other damages resulting from the fraud.[4]

When Tsepas discovered that the car Peachtree leased her had been wrecked, she elected to rescind the lease. Peachtree accepted the rescission. The UCC did not preclude Tsepas from pursuing her claim for fraud and rescinding the contract.[5] Thus, the trial court properly denied Peachtree's motions for directed verdict and j.n.o.v. on this issue.

(b) Peachtree claims in its appellate brief that Tsepas's fraud claim is missing two elements, but does not mention this issue in its enumeration of errors. "[M]atters not enumerated as error will not be considered on appeal. An enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration."[6]

2. Peachtree claims that the trial court erred by refusing to give its proposed jury instruction quoting a provision of the UCC that provides a supplier with an opportunity to cure a nonconforming delivery under certain circumstances. Based on our conclusion in Division 1 (a), we find that it was not error to refuse the requested instruction.

---

[3] OCGA § 13-5-5.

[4] *Skipper Sams, Inc. v. Roswell-Holcomb Assoc.*, 247 Ga. App. 237, 242 (2) (543 SE2d 765) (2000).

[5] *City Dodge v. Gardner*, 232 Ga. 766, 769 (208 SE2d 794) (1974).

[6] (Citation and punctuation omitted.) *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 357-358 (2) (d) (514 SE2d 691) (1999).

3. Peachtree claims that the verdict was inconsistent because the jury found in favor of Fowler and Huff but against Peachtree. Peachtree argues that because its liability could be based only on the actions of its employees, Fowler and Huff, it cannot be liable if they are not liable.

The jury was authorized by the evidence to find that Peachtree was derivatively liable through the actions of employees other than Fowler and Huff, including actions of its general manager Barton.[7] We therefore find no merit in this claim.

4. Peachtree claims that the trial court should have eliminated the attorney fees award because Tsepas failed to apportion the fees between claims or defendants.

The verdict form agreed to by the parties had only one space for the award of compensatory damages and did not allow the jury to separate the attorney fees from the other damages. In response to a question from the jurors, the judge instructed them that they were to include actual damages and attorney fees, if any, on the same line. Neither party objected to this instruction.

Tsepas sought compensatory damages in the total amount of $15,036.88, which included $13,070 in attorney fees. The jury awarded $309 less than the total amount sought, but we have no way of determining whether the jury reduced the attorney fees or the other damages. Peachtree could have raised this issue and had it ruled upon before the jury was dismissed, but failed to do so.[8] "An issue not raised during the trial in any form calling for a ruling will not be considered by this court."[9]

5. Peachtree claims that the $53,000 punitive damages award was excessive and in violation of the Eighth Amendment to the United States Constitution. It argues that the award was excessive because the punitive damages greatly exceeded the compensatory damages, excluding the attorney fees.

The excessive fines clause of the United States Constitution does not apply to civil cases between private parties.[10] Peachtree has not raised a claim under the federal constitution's due process clause. Thus, we review its remaining common law excessiveness claim under an abuse of discretion standard.[11]

In Georgia, an award of punitive damages under OCGA § 51-12-5.1 is intended to deter the repetition of reprehensible conduct by the

---

[7] See *Wal-Mart Stores v. Johnson*, 249 Ga. App. 84, 86 (1) (547 SE2d 320) (2001).

[8] See *KDS Properties v. Sims*, 234 Ga. App. 395, 399 (4) (506 SE2d 903) (1998).

[9] (Citations and punctuation omitted.) Id.

[10] *Browning-Ferris Indus. v. Kelco Disposal*, 492 U. S. 257 (109 SC 2909, 106 LE2d 219) (1989).

[11] *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 254 Ga. App. 598, 601 (2) (a) (ii) (563 SE2d 178) (2002).

defendant.[12] "Because deterrence is based on factors other than the actual harm caused, [the Supreme Court of Georgia] rejected the notion that punitive damages must necessarily bear some relationship to the *actual* damages awarded by the jury."[13] Instead, we consider whether an award of punitive damages is "so excessive . . . as to shock the judicial conscience."[14] The trial court did not abuse its discretion by determining that the award failed to meet that standard.

We may, however, consider the relationship between punitive damages and compensatory damages to determine whether the punitive damages award is excessive due to undue passion and prejudice.[15] But the record in no way demands a finding that the punitive damages award was infected by undue passion and prejudice.[16] The trial court did not abuse its discretion by refusing to reduce the award.[17]

*Judgment affirmed. Mikell, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED OCTOBER 8, 2002 —
RECONSIDERATION DENIED NOVEMBER 12, 2002

*Freed & Berman, Robert H. McKnight, Jr.*, for appellant.
*Buzzell, Graham & Welsh, Neal B. Graham, Timothy K. Hall*, for appellee.

---

[12] *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614 (1) (409 SE2d 501) (1991).

[13] (Citation and footnote omitted; emphasis in original.) Id.

[14] (Punctuation and footnote omitted.) *Wilson Welding Svc. v. Partee*, 234 Ga. App. 619, 620 (507 SE2d 168) (1998).

[15] *Hosp. Auth. of Gwinnett County*, supra at 614, n. 3.

[16] See *Bibb Distrib. Co. v. Stewart*, 238 Ga. App. 650, 655 (3) (519 SE2d 455) (1999).

