A05A0601. QUAY v. HERITAGE FINANCIAL, INC.
(617 SE2d 618)

MIKELL, Judge.

Heritage Financial, Inc. ("Heritage"), an estate planning company based in Georgia, sued James Quay, a former employee/estate planner, alleging that Quay breached his fiduciary duty to Heritage. The breach of fiduciary duty claim centered around an investment account opened with Securities America, a broker-dealer, in the name of a Heritage customer, Robert Myer. The investment account was opened in order to fund a newly created trust being set up by Quay for Myer's benefit. Heritage asserted that Quay breached his fiduciary duty by forging Myer's signature on the Account Application with Securities America, by failing to inform Heritage that Securities America had discovered the forgery, and by failing to inform Heritage that a monetary settlement had been reached between Quay and Securities America in connection with that forgery.

Heritage also asserted claims for breach of contract, misappropriation of trade secrets, fraud, promissory estoppel, and indemnification.

Following a five-day trial, the jury entered a verdict in favor of Heritage on its claims for breach of contract,[1] fraud and breach of fiduciary duty, and awarded $40,133.93 in compensatory damages; $650,000 in punitive damages; and $278,331.80 in attorney fees.

---

[24] *Hinton v. Ga. Power Co.*, 126 Ga. App. 416, 418 (4) (190 SE2d 811) (1972).

[1] Though the jury found that Quay had breached the January 2001 and February 2001 agreements, it awarded zero damages.

Quay appeals the denial of his motion for new trial, arguing that the trial court erred in upholding the excessive punitive damages award and in failing to properly allocate the award of attorney fees. Quay also argues that the jury's verdict was against the weight of the evidence and that the trial court erred in denying Quay an opportunity to testify about why he resigned from Heritage. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that Quay is a licensed attorney and estate planner. In June 1999, Heritage recruited Quay as an independent contractor to assist with presenting estate planning seminars and the sale of securities and insurance. Quay trained for his position for approximately one year, during which time he was assigned to Leonard Bittner, a Heritage employee and licensed attorney, who had been granted approval by Securities America to supervise the work of registered representatives at Heritage.

On or about April 19, 2000, Robert Myer, a 67-year-old BellSouth retiree attended a Heritage seminar and asked Quay to develop a trust strategy that included the use of a variable annuity. Myer and his wife met with Quay and purchased two annuity policies through him.

In July 2000, Quay executed an employment agreement with Heritage in which he acknowledged his fiduciary obligations to Heritage and agreed not to solicit Heritage customers and employees and not to compete with Heritage. In December 2000, Quay advised Heritage that he was resigning "to become legal counsel for an individual living in Texas." Instead of going to Texas, however, Quay set up an estate planning law practice in Sandy Springs with Bob Ahearn, a former Heritage employee. On January 10, 2001, Quay and Heritage executed a Severance Agreement which prohibited him from competing with Heritage within a seventy-five mile radius of Heritage's main location in Atlanta and from soliciting Heritage employees and customers for a period of two years.[2] On February 7, 2001, Quay and Heritage executed a separate Letter Agreement, in which Heritage agreed to "forego formal legal action" against Quay for his alleged breach of the Severance Agreement in exchange for Quay's promise not to make disparaging comments about Heritage; not to contact or communicate with Heritage employees; and not to use Heritage materials and/or conduct business seminars substantially similar to those conducted by Heritage, all for a one-year period.

---

[2] At trial, Quay testified that he did not believe the Severance Agreement to be enforceable and did not intend to honor its terms.

In October 2001, Quay went to work for Raymond James Financial as in-house counsel to Kevin Meaders, a financial planner. As in-house counsel, Quay conducted workshops and seminars for Meaders and drafted legal documents. When asked if he violated the provisions of the July 2000 employment agreement, Quay responded that he "believed the . . . contract was invalid. It was signed under duress and without consideration." Several months later, Bittner and Martin Lysaght, a former Heritage employee, also went to work for Raymond James Financial.

In the fall of 2001, Myer notified Securities America that his signature on the New Account Application appeared to have been forged. Securities America notified Bittner and the claim was settled in December 2001, with Myer being paid $236,007.76, the amount used to purchase the variable annuity. Without notifying Heritage, Securities America also deducted approximately $40,000 from a Heritage account.[3] Heritage had no knowledge of the settlement on behalf of Quay and did not learn about it until 2002.

At trial, Myer denied signing the New Account Application. Heritage's expert witness, a certified forensic document and handwriting expert, testified that "Robert Myer did not prepare the question signatures on [the New Account Application] . . . but that they were . . . prepared by James Quay." Quay's expert acknowledged that Myer's signature had been forged, but he could not determine if Quay was the author.

Quay appeals from the trial court's denial of his motion for new trial following the judgment entered on the jury's verdict in favor of Heritage.

1. Quay argues that the trial court erred in upholding the excessive punitive damages award because Heritage did not expressly request a charge on specific intent to cause harm and a separate finding of specific intent.

Under OCGA § 51-12-5.1 (b), punitive damages may be awarded only where it is established by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." That Code section further limits punitive damages to a maximum of $250,000 for any tort action, unless the trier of fact finds that "the defendant acted, or failed to act, with the specific intent to cause harm."[4] In

---

[3] According to Heritage, the actual amount deducted was $40,133.93, which represented the drop in value of the original purchase price of the annuity.

[4] OCGA § 51-12-5.1 (f).

*McDaniel v. Elliott,*[5] our Supreme Court adopted a "bright line rule requiring a party to request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the cap on punitive damages."[6] Trial in this case occurred in 2003, several years after the Supreme Court's ruling in *McDaniel.*

In its brief, Heritage contends that even if the special interrogatories submitted to the jury do not satisfy the specific intent charge requirement, Quay waived the alleged error by failing to object at trial or in any post-trial motion. Pretermitting whether or not Quay properly objected to the alleged omission/error at trial or raised the issue in a timely post-judgment motion, the bright line rule announced in *McDaniel* means that failure to object to the absence or inadequacy of a specific intent charge or finding does not constitute a waiver of the error for the purpose of appellate review. Because the claimant for punitive damages bears the burden of meeting the procedural requirements of OCGA § 51-12-5.1 (g), a verdict for punitive damages in excess of $250,000 may not stand unless the record reflects both a request to charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact.[7] Accordingly, the trial court erred in failing to reduce the punitive damage award. The judgment can be affirmed only on the condition that, within ten days from the date that the remittitur of this Court is made the judgment of the trial court, Heritage agrees to strike therefrom the award of punitive damages in excess of $250,000; otherwise the award of punitive damages is reversed.[8]

2. Quay argued in his motion for a new trial that an award of $650,000 was excessive and in violation of his due process rights. We have made a de novo review of the record and determined that an award of $250,000 is not excessive and does not violate Quay's due process rights.[9]

3. Quay contends that the award of attorney fees should be reversed because the evidence upon which it was based did not allocate between Heritage's successful and unsuccessful claims or between work done for defendants other than Quay.[10] Heritage

[5] 269 Ga. 262 (497 SE2d 786) (1998).

[6] Id. at 265 (3).

[7] See *Scott v. Battle,* 249 Ga. App. 618, 622 (4) (a) (548 SE2d 124) (2001).

[8] See *Sims v. Heath,* 258 Ga. App. 681, 688 (8) (577 SE2d 789) (2002), citing *Wal-Mart Stores v. Johnson,* 249 Ga. App. 84, 89 (6) (547 SE2d 320) (2001) and *J. B. Hunt Transport v. Bentley,* 207 Ga. App. 250, 256 (2) (427 SE2d 499) (1992).

[9] See generally *Time Warner Entertainment Co. v. Six Flags Over Ga.,* 254 Ga. App. 598 (563 SE2d 178) (2002).

[10] Heritage also sued Lysaght, but settled its claims against him prior to trial.

contends that Quay waived any objection to the award by failing to raise the issue during the trial. In his reply brief, Quay argues that he preserved the issue by cross-examining Heritage's counsel[11] and by moving for a new trial. We agree with Heritage.

To preserve the issue of fee allocation for appellate review, Quay should have raised the issue and obtained a ruling by the trial court before the jury was dismissed.[12] "An issue not raised during the trial in any form calling for a ruling will not be considered by this court."[13] In *KDS Properties*, we rejected this exact argument, finding that defendants failed:

> (i) to submit a request to charge as to other litigation expenses, (ii) to object timely to the sufficiency of the verdict form for failing to address allocation of attorney fees and other litigation expenses, and (iii) to take a specific exception to the sufficiency of the jury charge as to allocation of attorney fees and litigation expenses.[14]

We further found that the issue "was not timely raised in [defendants'] motion for j.n.o.v. or in [their] motion for new trial."[15]

In this case, Quay has not provided any citations to the trial transcript showing that he (1) submitted a request to charge as to other litigation expenses, (2) objected timely to the sufficiency of the verdict form, and/or (3) took exception to the sufficiency of the jury charge as to allocation. Moreover, neither Quay's motion for new trial nor his alleged cross-examination of Heritage's counsel was sufficient to preserve the issue for appellate review.

4. Quay contends that there was insufficient evidence of forgery to support the verdict on Heritage's breach of fiduciary duty claim. Specifically, Quay contends that Heritage's expert never compared Myer's cursive signature with Quay's cursive signature. We disagree.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence.

---

[11] Quay has not cited to this portion of the trial transcript.

[12] *KDS Properties v. Sims*, 234 Ga. App. 395, 399 (4) (506 SE2d 903) (1998). See *Lincoln v. Tyler*, 258 Ga. App. 374, 376 (1) (574 SE2d 440) (2002) ("If the defendants desired an explanation of the basis for the [attorney fee] award, they should have objected to the verdict form, which allowed the jury free rein to set damages. Their failure to do so while the jury was still present and available to reform the verdict waived any objection.") (footnote omitted).

[13] (Citations and punctuation omitted.) *KDS Properties*, supra.

[14] (Citation omitted.) Id.

[15] Id.

The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for new trial will not be disturbed.[16]

Myer testified that he did not sign the New Account Application. Heritage's handwriting expert opined that "Robert Myer did not prepare the question signatures on [the New Account Application] but that they were . . . prepared by James Quay," and Quay's handwriting expert acknowledged that Myer's signature had been forged. Both experts presented their findings and opinions to the jury, including demonstrative exhibits comparing the two signatures. In light of this testimony, we do not find that the jury's verdict was against the weight of the evidence.

5. Lastly, Quay contends that the trial court erred by refusing to allow him to testify as to the primary reason he resigned from Heritage. "The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion."[17]

According to the testimony given by Quay in his offer of proof, he resigned from Heritage because upper management "participated in activities of a sexual nature outside their marriages [including frequenting] prostitutes . . . and porno web sites." Quay contends that the testimony was relevant to the issue of whether he acted in good faith and in accordance with his fiduciary duty to Heritage. Quay further argues that the testimony casts doubt on Heritage's claim of forgery and other wrongful conduct by Quay in the course of his employment. Since Quay has not directed us to that portion of the record where the trial court explains its reasoning for excluding the testimony, we can only presume that the trial court found the testimony prejudicial and irrelevant, and we agree. The sexual activities of Heritage's upper management have no bearing on whether or not Quay committed fraud, forged a client's signature, or breached his contractual obligations to Heritage.[18] We find no abuse of discretion in excluding the evidence.

---

[16] (Citation omitted.) *Habel v. Tavormina*, 266 Ga. App. 613, 618 (3) (597 SE2d 645) (2004).

[17] (Punctuation and footnote omitted.) *Kilburn v. Young*, 256 Ga. App. 807, 810 (1) (569 SE2d 879) (2002).

[18] See, e.g., *Northern Assurance Co. of America v. Roll*, 176 Ga. App. 893, 894 (5) (338 SE2d 870) (1985) (in action brought by insured against insurer to recover on fire policy, testimony concerning the sexual preferences of plaintiff was properly excluded as irrelevant and prejudicial).

*Judgment affirmed on condition.*[19] *Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 12, 2005.

*Anthony Kirkland,* for appellant.
*Irvin, Stanford & Kessler, E. Ray Stanford, Jr.,* for appellee.