## A07A0591. BOLDEN v. RUPPENTHAL et al.
(650 SE2d 331)

ADAMS, Judge.

Willie James Bolden, who has since died, brought suit to recover one-half of the proceeds of the settlement of a wrongful death action arising out of his son Charlie Rhone's death. Bolden, and later Patricia Bolden (his widow) as administratrix of his estate, alleged, among other things, that Charlie Rhone's mother, Wyona Rhone, together with her son James Rhone and James's wife Lorine, damaged Bolden by taking the proceeds for themselves without notice to Bolden. The matter went to trial before a jury in bifurcated proceedings, but the jury ruled in favor of the Rhones. Bolden now appeals the denial of his motion for new trial by challenging several aspects of the trial court's decision to bifurcate. This is the second appearance of this case in this Court. See *Rhone v. Bolden*, 270 Ga. App. 712 (608 SE2d 22) (2004).

Bolden and Wyona Rhone were never married, but Bolden's paternity of Charlie Rhone has been established by an Alabama court. Yet it is undisputed that there are issues of fact regarding the extent to which Bolden helped provide necessaries for the child and the extent to which he was involved in his son's upbringing. On March 5, 1999, Charlie, a Georgia resident, died intestate at age 27, allegedly as a result of medical malpractice. He had never married and had no children. Following her son's death, Wyona Rhone filed a wrongful death action and eventually settled with South Fulton Hospital for $1.9 million. James Rhone, acting as Wyona Rhone's agent, made all the decisions about the litigation. On November 11, 2001, the trial court ordered the money be paid as follows: $770,218 to purchase an annuity for the benefit of Wyona Rhone; and $349,700 to James Rhone as administrator of Charlie Rhone's estate to be used to satisfy debts of the estate, to compensate the administrator for his duties, and to distribute the remaining funds to Charlie Rhone's heirs pursuant to OCGA § 53-2-1. The sum of $760,000 was distributed as attorney fees for the estate lawyers and the lawyers who handled the wrongful death suit. It is undisputed that Bolden did not get any of the settlement.

Bolden filed the instant action against the Rhones and their attorneys and alleged that the Rhones committed fraud and the attorneys committed legal malpractice, among other things, arising out of their efforts to prevent him from receiving a share of the

settlement proceeds.[1] Under the applicable law, Bolden had a right to share in the recovery of the wrongful death action. OCGA § 19-7-1 (c) (2). Even so, the same statute provides that for cases in which the parents are divorced, separated, or living apart, one parent is authorized to move that the proceeds be fairly apportioned based on "each parent's relationship with the deceased child, including permanent custody, control, and support, as well as any other factors found to be pertinent." OCGA § 19-7-1 (c) (6).[2] Bolden alleges that he never received notice of the wrongful death suit, and furthermore, that the Rhones concealed it from him and defrauded him by representing to the court in the wrongful death action that Wyona was Charlie Rhone's "sole surviving parent and sole heir," so that Bolden would not be notified. By the time Bolden found out, it was too late to intervene in the wrongful death action or to receive any of the settlement proceeds.

Bolden also eventually discovered that James and Lorine Rhone had converted the estate proceeds — the $349,700 — to their own use by putting them in their personal account and by jointly purchasing a residence in their own names, as well as informing the probate court that Bolden was deceased. In proceedings there, the probate court has now removed James as the administrator and awarded half of that money to Bolden with attorney fees and punitive damages in an amount not yet determined. *Rhone*, 270 Ga. App. at 712, n. 1. Bolden contends the wrongful acts continued into this litigation. Indeed, at one point in the proceedings below, the trial court found James and Lorine Rhone in contempt for violating an earlier injunction by refinancing the mortgage on the property they bought with estate assets. Id. at 713-714 (2).

Eventually, the trial court granted summary judgment in favor of the Rhones' attorneys, which ruling was affirmed in the earlier case before this Court. *Rhone*, 270 Ga. App. at 715-721. This Court also held that issues of fact remained on Bolden's claims against the Rhones, id. at 721-724, and the case was remanded for retrial.

---

[1] During the proceedings below, due to her incapacity, Wyona Rhone was appointed a guardian for her property, who was substituted as a defendant for Wyona. James Rhone is the guardian of her person.

[2] But if no such motion is filed, the "judgment shall be divided equally between the parents . . . ; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if the absent parent is not found as the judgment directs." OCGA § 19-7-1 (c) (2) (C). After the wrongful death suit had been dismissed, Wyona Rhone filed a motion to apportion in that case. The motion was dismissed as untimely by the trial court. In the prior appellate ruling in this case, this Court held that because that decision was not appealed, Bolden could not contest the fact that "Wyona Rhone moved to apportion the funds in the court in which the wrongful death suit was filed." *Rhone*, 270 Ga. App. at 724 (13). Although this is the law of the case, we note that OCGA § 19-7-1 (c) (6) requires such a motion to be filed prior to trial.

After entry of the pre-trial order and 11 days before trial, the Rhones moved to bifurcate the trial. The trial court granted the motion along the lines proposed by the Rhones. The court essentially held that the jury would initially determine whether Bolden would have been entitled to any share of the wrongful death proceeds as if Wyona Rhone had timely notified Bolden and timely filed a motion to apportion the proceeds under OCGA § 19-7-1 (c) (6). Only in the second phase would the jury decide whether the Rhones wrongfully excluded Bolden from the proceeds and, if so, the amount of Bolden's share of the wrongful death proceeds, as well as attorney fees and punitive damages. In addition to the argument at the hearing on the motion, Bolden objected again at the beginning of the trial to the bifurcation and the manner in which the bifurcation was being implemented.

Following the trial for phase 1, the jury answered "no" to a special interrogatory that asked, "Was Bolden entitled to recover a portion of the settlement proceeds for the wrongful death of his son Charlie Rhone?"

Bolden contends the trial court erred with regard to the decision to bifurcate in four ways: (1) when considering whether to bifurcate, the court refused Bolden's proffer of anticipated evidence regarding the Rhones excluding him from his share of the wrongful death proceeds; (2) the court allowed amendment of the pre-trial order to include bifurcation without requiring a showing of absence of laches or inexcusable delay; (3) by bifurcating the trial because it unfairly prejudiced Bolden by limiting his right of cross-examination regarding post-death facts; and (4) by trying the damages issue before the liability issue because it violated proper procedures for bifurcation. Bolden contends the judgment should be vacated and the case remanded for a new trial.

1. Bolden attempted to make a proffer of additional evidence long after the trial court made a decision on whether to bifurcate. If Bolden contends the trial court should have considered the information before making the bifurcation decision he should have submitted the proffer at the hearing on whether to bifurcate. Therefore, Bolden's first enumeration has no merit.

2. Once a pre-trial order has been entered, as it had been here, a party may not amend it without leave of court or consent of the opposite party. OCGA § 9-11-15 (a). Because Bolden did not consent, the Rhones moved to amend the pre-trial order to allow bifurcation. They filed their motion only eleven days before trial, and the hearing on the motion was held five days before trial. Bolden contends the trial court erred by amending the pre-trial order to allow bifurcation "without requiring the Rhones to make a showing of lack of laches and inexcusable delay."

"In exercising its discretion [when amending the pre-trial order], the trial court must balance possible unfair prejudice to the nonmoving party with the movant's reasons for delay. [Cit.]" *Rowe v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 770 (525 SE2d 123) (1999). This Court has held, "the burden is on the party seeking to amend the order to show lack of laches or lack of unexcusable delay in presenting the issue to the court." (Citation and punctuation omitted.) *Whorton v. Boatwright*, 233 Ga. App. 369, 371 (504 SE2d 216) (1998). Nevertheless, it has long been the law that delay alone is not enough to warrant denial of a motion to amend. *Gordon v. Gillespie*, 135 Ga. App. 369, 376 (2) (217 SE2d 628) (1975). "The primary question for consideration . . . is whether the allowance of their proposed amendment will work an injustice upon the [opposite party], and the timeliness of the motion for leave to amend is one of the elements to be considered." Id. At the hearing, Bolden never objected on the grounds that the timing of the motion to bifurcate caused any injustice. The parties argued the merits of the motion to bifurcate without addressing the timing of the motion. Nor has Bolden explained how he was harmed by the timing of the motion. We find no reversible error.

3. Bolden also contends the court erred with regard to the structure of the bifurcation itself. Bolden contends the court violated required procedures for bifurcation in a case involving punitive damages and that he was never allowed to present evidence of liability under the claims that he asserted. He also argues that the bifurcation unfairly limited the topics on which he could cross-examine defense witnesses. We agree.

Amendments to the pre-trial order "are to be liberally granted by the court as justice requires. [Cit.]" *Rowe*, 240 Ga. App. at 769 (3). And a court is authorized to order bifurcation "in furtherance of convenience or to avoid prejudice." OCGA § 9-11-42. The decision to allow bifurcation also falls within the discretion of the trial judge. OCGA § 9-11-42 (b). Accordingly, the decision here will not be reversed absent a "clear and manifest abuse of discretion." *Whitley v. Gwinnett County*, 221 Ga. App. 18, 19 (2) (470 SE2d 724) (1996).

With regard to the Rhone defendants, Bolden brought claims of breach of fiduciary duty, fraud, fraudulent concealment, and money had and received. Bolden argued that he should be allowed to show the jury that Wyona Rhone had a duty to apportion under the statute, that she and James, her agent, breached that duty, and that James and Lorine converted estate proceeds to their own use and engaged in

other wrongdoing. He added that his claim for punitive damages should only be addressed after the *entire* liability issue had been resolved.[3]

Thus the true liability issues in this case are whether the Rhone defendants breached a fiduciary duty, committed fraud, acted to conceal their fraud, and took money not belonging solely to them. These issues were not addressed in phase 1 of the trial. Rather, the first phase only addressed a defense to a damage issue, i.e., was Bolden precluded from recovering any share of the settlement proceeds because he had not been a supporting father. Despite the Rhones' protestations to the contrary, there is nothing in our earlier opinion in this case inconsistent with what we hold here. We stated that Bolden's action is not a statutory apportionment action but rather one for damages, and Bolden's "degree of participation and involvement in [Charlie] Rhone's life is relevant to determining *the amount of damages* he is entitled to receive, if any." (Emphasis supplied.) *Rhone*, 270 Ga. App. at 724 (13).

The Supreme Court in *Webster v. Boyett*, 269 Ga. 191 (496 SE2d 459) (1998), held that as a result of the punitive damage bifurcation procedure codified in OCGA § 51-12-5.1, courts must use their discretion to either bifurcate or trifurcate a trial when punitive damages are at stake. In a bifurcated proceeding, the jury first addresses liability, compensatory damages, and liability for punitive damages. Id. at 193. In the second phase, the jury considers the amount of punitive damages. Id. In a trifurcated proceeding, the jury decides liability and compensatory damages in the first phase, liability for punitive damages in the second phase, and the amount thereof in the third phase. Id. The Supreme Court added that cases requiring a trifurcated procedure would be rare. Id. at 196 (2).

The trial court in this case did not follow either of the above procedures. Rather, in phase 1 liability was not addressed and one issue regarding damages was. To bifurcate this case in this manner amounted to changing Bolden's lawsuit from one showing that the Rhones attempted to defraud him to one in which he had to prove he was a good father. This put the Rhones in a better position than they were in when they failed to give him notice of the wrongful death proceedings and settlement. In other words, the issue of Bolden's role as a father would have been addressed in those proceedings if Bolden had been notified of the settlement of the wrongful death suit and only if Wyona Rhone had timely filed a motion to apportion the

---

[3] But in an exchange with the judge, Bolden's counsel eventually agreed that if the jury said Bolden was not entitled to any proceeds of the wrongful death suit, he would not be entitled to any punitive damages.

proceeds under OCGA § 19-7-1 (c) (6), neither of which occurred. Thus the bifurcation inured solely to the benefit of the Rhones. They were allowed to limit the entire trial to their defense that Bolden was a bad father. As Bolden argued, the possible convenience of shortening the trial was outweighed by the prejudice to Bolden. It gave the Rhones a second chance to argue that Bolden was not entitled to share the recovery without the jury having to hear that they may have intentionally acted to deprive Bolden of that share.

In addition, as Bolden contends, the manner of bifurcation unfairly limited his right of cross-examination regarding post-death facts. At the hearing on the motion to bifurcate, the Rhones urged that Bolden's entitlement to a share of the wrongful death proceeds would be "based on pre-death facts only." Counsel for the Rhones stated, "If there's a bifurcation, then there are no post-death facts." Counsel added that if the trial were bifurcated, numerous witnesses related to the allegations of how the Rhones handled the wrongful death matter would not need to be called to the stand during the first phase of the trial and only four out of ninety-six exhibits were relevant to the pre-death events. Counsel continued that there would also be no need for the jury to hear about what happened to the $349,700, i.e., that James and Lorine Rhone had wrongfully misappropriated the money and were subject to punitive damages in the probate court.

When the court granted the request to bifurcate, it explained that the first trial would be "for the purposes of determining . . . under [OCGA §] 19-7-1, the relationship between Mr. Bolden and his son, the decedent. And the issues that are pertinent and relevant to that are what . . . happened *prior to the death* of [Charlie] Rhone. . . ." "And all of this other stuff and what the attorneys did or didn't do is not relevant to what we need to establish in round one." The prohibition on post-death evidence continued at trial. Counsel for the Rhones objected when portions of Bolden's opening statement appeared to refer to post-death facts, and the court reiterated, "[T]he ruling on this was that we're gonna talk about what happened before the death. . . ."

We find guidance in the case of *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365 (508 SE2d 716) (1998), in which this Court found that bifurcation can function in a manner similar to a ruling in limine in that it is designed to keep inadmissible information from the jury. In *Cantrell*, a trial court granted a motion to bifurcate in a medical malpractice action. The first phase of the trial addressed liability and the second addressed damages. Id. at 367 (1). In connection with the bifurcation, the lawyers and the court engaged in a lengthy discussion that included an instruction that the plaintiff could prove the fact of damage, i.e., death, during the liability phase, but that "the extent of [the deceased's] pain and suffering, the extent

of her losses must be reserved for the second phase of this trial." Id. at 370 (5). The court also explained, that the "issues to be addressed in the liability phase of this case will be two, and the issues are was there malpractice and did the malpractice cause Ms. Cantrell's death." (Punctuation omitted.) Id. The court instructed plaintiff's counsel by further adding "you need to limit the evidence to the two issues of was there malpractice and did the malpractice cause death." (Punctuation omitted.) Id. At the end of the plaintiff's case, the plaintiff attempted to tender three depositions in their entirety. Id. Following a defense objection to inadmissible portions of the depositions, the court stated that "the law puts an obligation on you [the plaintiff] not to tender clearly inadmissible evidence and that's the responsibility I put on you and it's your obligation to follow that direction and it's fairly clear." (Punctuation omitted.) Id. at 370-371 (5).

In deciding that the trial court had not imposed an unfair obligation on the plaintiff, this Court found guidance in the parallels between bifurcation and motions in limine by recognizing that they can perform similar functions of keeping inadmissible information from the jury:

> The purpose in filing a motion in limine to suppress evidence (or motion to bifurcate liability and damages) or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case. . . . It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine (or motion to bifurcate) is intended to reach.

(Citations and punctuation omitted.) *Cantrell*, 235 Ga. App. at 371 (5). This Court held that the trial court had not erred by requiring plaintiff's counsel to avoid asking questions or otherwise presenting information pertinent only to phase 2 of the bifurcated trial. Id. at 370-371 (5).

Applying *Cantrell* to this case, we hold that the discussion regarding bifurcation, including the court's own words regarding limiting phase 1 to what happened *"prior to the death* of [Charlie] Rhone . . ."* could reasonably have been interpreted as tantamount to an order in limine excluding other evidence. It specifically excluded all of the alleged wrongdoing by the defendants of attempting to mislead the court into thinking that Bolden was dead or in otherwise taking the proceeds of the wrongful death settlement for themselves

without notice to Bolden. Accordingly, the fact that Bolden did not attempt to introduce any such evidence during phase 1 cannot be held against him. Compare *Hanie v. Barnett*, 213 Ga. App. 158, 160 (2) (444 SE2d 336) (1994) (plaintiffs were specifically allowed by the court to raise certain factual allegations on rebuttal or cross-examination after raising issue with court; because they failed to do so and failed to proffer allegedly excluded evidence, there was nothing for this Court to review).

Second, by preventing Bolden from introducing the post-death facts that showed the defendants to be biased and lacking in credibility, Bolden's case was prejudiced. That information was relevant and admissible: "The state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury." OCGA § 24-9-68. And

> [t]he purpose of cross-examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted. Wherever the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross examinations.

(Citations and punctuation omitted.) *Letlow v. State*, 222 Ga. App. 339, 342 (2) (474 SE2d 211) (1996). In this case, there was evidence that the Rhones had intentionally deprived Bolden of his right to some share of the settlement proceeds and that James and Lorine Rhone had converted estate funds to their own use, some of which Bolden was entitled to.

Finally, we cannot say that it is highly probable that the error did not contribute to the judgment. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Without any testimony regarding post-death facts, the jury was precluded from learning about the Rhones' attempts to defraud Bolden or breach their fiduciary duties toward him. These points strongly reflect on the bias of James Rhone especially, and could also reflect on the other Rhone witnesses, all of whom are Rhone relatives. James Rhone and his relatives testified that Bolden had played little if any role in the upbringing of his son. If the jury thought these witnesses were biased, it could easily have believed at least some of Bolden's testimony that he had played a role in his son's upbringing.

The case of *Bowen v. Hunter, Maclean, Exley & Dunn*, 241 Ga. App. 204 (525 SE2d 744) (1999), upon which the Rhones heavily rely, is physical precedent only and therefore not binding. Also, the quotation in the prior appeal of this case to *Sapp v. Solomon*, 252 Ga. 532 (314 SE2d 878) (1984), was simply an effort to point out that under

the law, Bolden's role as a father is relevant to his right to apportionment of the proceeds of a wrongful death claim under OCGA § 19-7-1. See *Rhone*, 270 Ga. App. at 723-724 (12). However, we note that the applicable law regarding the factors to be considered on this issue is found in OCGA § 19-7-1 (c) (6), which was enacted three years after the *Sapp* decision. See Ga. L. 1987, p. 619, §§ 1-3 (codifying what is now OCGA § 19-7-1 (c) (6), which became effective for causes of action arising on or after July 1, 1987, and repealing all laws and parts of laws in conflict with the new statutory provision). See also *Dove v. Carver*, 197 Ga. App. 733, 734 (399 SE2d 216) (1990) (suggesting *Sapp* applicable only before the 1987 amendment).

For the reasons stated above, we hold that the trial court abused its discretion in bifurcating the trial in the manner chosen. The judgment of the court below denying Bolden's motion for new trial is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 10, 2007 —
RECONSIDERATION DENIED JULY 26, 2007 — 

*Allen W. Bodiford*, for appellant.
*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., J. Christopher Fox II, Smith Moore, Elizabeth J. Bondurant*, for appellees.