A07A1677. SURLES v. CORNELL CORRECTIONS OF
CALIFORNIA, INC.
(659 SE2d 683)

BERNES, Judge.

Defendant Robert B. Surles appeals from the final judgment and decree entered on the jury verdict in favor of plaintiff Cornell Corrections of California, Inc. on Cornell's claims for fraud and punitive damages brought against multiple defendants. Surles enumerates several errors that he contends entitle him to a new trial. First, he contends that the trial court erred in entering judgment on an allegedly confusing and internally inconsistent jury verdict. Second, Surles contends that the trial court erred in entering any judgment

---

against him because he did not receive sufficient notice of trial. Third, he contends that the trial court erred in entering a judgment awarding punitive damages against him because the jury did not apportion punitive damages against every defendant found liable for fraud; there was insufficient evidence to support the jury's apportionment of punitive damages; and there was insufficient evidence to support an aggregate punitive damages award in excess of $250,000. For the reasons discussed below, we affirm on condition that the punitive damages award against Surles be properly reduced.

"On appeal, we examine the record in the light most favorable to the verdict and judgment." (Citation omitted.) *Compris Technologies v. Techwerks, Inc.*, 274 Ga. App. 673, 673, n. 1 (618 SE2d 664) (2005). So viewed, the evidence shows that plaintiff-appellee Cornell provides correctional and rehabilitative services to state and local governments across the country. In 2003, defendant Longboat Global Advisors, LLC agreed to provide financing to a contractor that was constructing a juvenile correctional facility for Cornell in Colorado (the "Colorado Project"). As part of the financing arrangement, on August 28, 2003 Cornell entered into an "Escrow Disbursement Agreement" (the "Agreement") under which Cornell agreed to deposit $12,937,500 into what it believed was an escrow account at Bank of America in Atlanta. Under the Agreement, Bank of America, acting as escrow agent, was authorized to disburse Cornell's deposited funds only after completion of the Colorado Project. The Agreement was executed by Cornell, the Colorado contractor, and defendant Edgar J. Beaudreault as managing director of Longboat. The Agreement also contained the purported signature of an officer with Bank of America.

Following execution of the Agreement, Beaudreault provided Cornell with a Bank of America account number and wiring instructions, after which Cornell wired the money into the alleged escrow account. Unbeknownst to Cornell, however, an escrow account had not been created, and Beaudreault had forged the signature of Bank of America on the Agreement. Without Cornell's knowledge or consent, Beaudreault had instead arranged for Cornell's funds to be wired into a Longboat securities account, after which he transferred the funds into a different, newly-created bank account from which he could freely remove the funds. By the time Cornell discovered that it was being defrauded, Beaudreault had secretly removed $5,100,000 of Cornell's funds, which he had transferred to defendant Howard Sperling and his investment company, defendant Hasco Financial, for use in other investment projects. Additionally, defendant-appellant Surles had received $495,000 of Cornell's funds, either directly from Beaudreault or indirectly through Sperling, for the construction of a marina in Chicago. Furthermore, Beaudreault had

transferred $287,500 of Cornell's funds into his own checking account, and his wife had received $170,500 of the funds indirectly through Sperling. In total, once the direct and indirect transfers to various parties were taken into account, $5,644,051.80 of Cornell's deposited funds had been removed in violation of the Agreement.

Beyond the money trail, Cornell presented further evidence at trial reflecting that Beaudreault, Sperling, and Surles had conspired together to misappropriate Cornell's funds. The three men knew each other prior to the commencement of the Colorado Project. Sperling and Surles had done several investment deals with one another over the years. Beaudreault and Sperling also had done several investment deals together prior to the Colorado Project. Sperling later introduced Surles to Beaudreault, and Surles in turn was actively involved in convincing Beaudreault and Longboat to become involved in the Colorado Project.

On August 14, 2003, Surles faxed Beaudreault a copy of a letter he had sent to Sperling about the Colorado Project, which included the draft of the proposed escrow disbursement agreement. In the letter, Surles described the Colorado Project and noted that Cornell planned to deposit $12,937,500 into an escrow account that would "basically be dormant for a period of 8 to 12 months." Surles offered Sperling "a shot at this deal" and emphasized that Sperling could "gain significant leverage on the money." Surles went on to suggest that perhaps he himself could receive a "loan" for his own investment project "for the same term" as Cornell's funds would lay dormant. Construed in favor of the verdict, the August 14 letter indicates that prior to execution of the Agreement, Beaudreault, Sperling, and Surles were devising a plan to appropriate Cornell's funds for their own use while the funds lay "dormant."

Cornell also presented evidence that when Cornell became concerned that it was not receiving bank statements for the escrow account, Beaudreault, Sperling, and Surles acted in concert to cover up the removal of Cornell's funds for their own use. Specifically, in November 2003, Cornell asked Beaudreault for documentation regarding the account. Beaudreault then told Cornell that Bank of America had decided not to serve as escrow agent and that he had transferred the funds into an escrow account at Fleet Bank. On December 4, 2003, Beaudreault sent a letter to Cornell in which he falsely assured Cornell that its $12,937,500 was being held "in a separate account" at Fleet Bank and would "only be disbursed upon completion of the [Colorado] Project." Attached to the December 4 letter was a purported e-mail from "Mark J." at Fleet Bank falsely confirming that Cornell's funds would be "set aside" and would be

maintained "in a reserved status" until further instruction. According to Beaudreault, the intent of this correspondence was to reassure Cornell "that nothing was wrong."

Significantly, the language contained in the December 4 letter to Cornell — including the false assurances that all of Cornell's funds had been properly set aside — came almost verbatim from language suggested by Surles in an e-mail he had sent to Beaudreault and Sperling earlier that same day. Similarly, the language found in the purported Fleet Bank e-mail came almost verbatim from language suggested in an e-mail sent earlier that day to Beaudreault by Sperling.

Ultimately, Cornell learned that it had been defrauded, leading it to commence the instant action alleging that Longboat and Beaudreault were liable for fraud and seeking, among other things, compensatory and punitive damages. Cornell later amended its complaint and added Sperling, Hasco Financial, and Surles as defendants.[1] A trifurcated jury trial followed.[2]

In the first phase of the trial, the jury heard the evidence set out above and returned a verdict in favor of Cornell on its fraud claim against Beaudreault, Sperling, Hasco Financial, and Surles.[3] The verdict form read as follows:

> We, the jury, find for the Plaintiff as follows: *$6,490,660.00* as damages.
> This award may be apportioned as follows:
> *$0* against Defendant Longboat Global Advisors, LLC;
> *$6,490,660.00* against Defendant Edgar J. Beaudreault, Jr.;
> *$6,490,660.00* against Defendant Hasco Financial;
> *$6,490,660.00* against Defendant Howard Sperling;
> *$6,490,660.00* against Defendant Robert B. Surles.
> We, the jury, find for the Defendant Longboat Global Advisors, LLC.

---

[1] In its amended complaint, Cornell also asserted claims for breach of contract, conversion, and money had and received against the various defendants. The jury ultimately found in favor of Cornell on its breach of contract and money had and received claims. Prior to entry of the judgment, however, Cornell settled its claims with Longboat and elected to pursue only its fraud remedy against the remaining defendants.

[2] "In a trifurcated proceeding, the jury decides liability and compensatory damages in the first phase, liability for punitive damages in the second phase, and the amount thereof in the third phase." (Citation omitted.) *Bolden v. Ruppenthal*, 286 Ga. App. 800, 804 (3) (650 SE2d 331) (2007).

[3] Sperling and Surles failed to appear at trial, although both were represented by counsel during the proceedings. The plaintiffs introduced deposition testimony from Sperling.

In order to clarify the meaning of the verdict, the trial court then entered into the following colloquy with the jury foreperson:

> COURT: All right. And you have zero by Longboat. As to the other defendants, are they to — how are they to be —
> FOREPERSON: Okay. They're to pay $6,490,660.
> COURT: Each defendant is to share in the single amount?
> FOREPERSON: Right. It's to share.
> COURT: To share jointly. So there is a single award?
> FOREPERSON: Well, we have it down against all of them. Each name this amount is by.
> COURT: So the total fraud award would be?
> FOREPERSON: $6,490,660 as damage.
> COURT: Thank you. Is the total fraud award.
> FOREPERSON: Right.

In phase two of the trial, the jury heard additional instructions and argument concerning whether punitive damages were appropriate. The jury deliberated again and concluded that punitive damages should be awarded against Beaudreault, Sperling, and Surles, but not Hasco Financial. Finally, in phase three, after hearing additional evidence, argument, and instructions, the jury found that none of the defendants had acted with the specific intent to cause harm and awarded punitive damages apportioned in the amount of $12,937 against Beaudreault, $1,293,750 against Sperling, and $129,375 against Surles.

Surles subsequently moved for a new trial. In its order on the new trial motion, the trial court ruled, based on its colloquy with the jury foreperson, that the verdict on the fraud claim was intended to hold Beaudreault, Sperling, Hasco Financial, and Surles jointly and severally liable for $6,490,660 in compensatory damages. The trial court went on to rule, however, that Cornell had only sought and proven $5,644,051.80 in compensatory damages at trial, and that damages beyond that amount were excessive and contrary to the preponderance of the evidence. As such, the trial court ruled that Surles' motion for new trial would be granted unless Cornell accepted remittitur to the amount of its actual damages on its fraud claim. The trial court denied Surles' motion in all other respects.

Cornell accepted a reduced verdict on its fraud claim. As a result, the trial court entered a final judgment and decree in favor of Cornell and against Beaudreault, Sperling, Hasco Financial, and Surles jointly and severally in the amount of $5,644,051.80 on the fraud claim. The trial court further entered judgment for punitive damages in the amounts of $12,937 against Beaudreault and $129,375 against

Surles, and in a reduced amount of $250,000 against Sperling pursuant to OCGA § 51-12-5.1 (g).[4] Surles now appeals from the judgment.

1. Surles contends that the trial court erred in entering judgment on the verdict with respect to the fraud count. Specifically, Surles argues that on the fraud count, the verdict form initially stated that the total award was $6,490,660, but then apportioned an award of damages as to each defendant individually that added up to four times that amount. As such, Surles asserts that the verdict was confusing and internally inconsistent such that no judgment could be entered on it. We disagree.

"As a general rule, a verdict which is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside. The entry of such a judgment is a ground for granting a new trial." (Citation omitted.) *KDS Properties v. Sims*, 234 Ga. App. 395, 396 (1) (506 SE2d 903) (1998). See also *Docutronics, Inc. v. Reitman*, 235 Ga. App. 268, 269 (509 SE2d 348) (1998). However, under OCGA § 9-12-4, "[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." Thus, "[t]he presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them." (Citations and punctuation omitted.) *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 7-8 (4) (497 SE2d 616) (1998). "Even if the verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied." (Citation and punctuation omitted.) *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 106 (1) (483 SE2d 342) (1997). Furthermore, in determining the proper interpretation of a jury verdict and to remove any ambiguity, the trial court may question the jury prior to disbursal in order to clarify the

---

[4] OCGA § 51-12-5.1 provides in part:

. . .

(e) (1) In a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. . . .
(f) In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, or that the defendant acted or failed to act while under the influence of alcohol, [or] drugs . . . , there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor.
(g) For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00.

. . .

jury's intent. *American Petroleum Products*, 231 Ga. App. at 8 (4). See also *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 253 (3) (329 SE2d 918) (1985) (intent of jury determined in part from jury's "answers to the court's written questions"), rev'd in part on other grounds, *Diedrich v. Miller & Meier &c.*, 254 Ga. 734 (334 SE2d 308) (1985).

In light of these interpretive principles, the trial court properly entered judgment in the present case. When questioned by the trial court, the foreperson clearly stated that the jury's award on the fraud count was intended to be joint and several. He further specifically stated that the total award was $6,490,660. Given this colloquy between the trial court and foreperson, any ambiguity or inconsistency in the verdict form was removed.[5] We therefore discern no grounds for setting aside the judgment. See *American Petroleum Products*, 231 Ga. App. at 8 (4); *Miller & Meier & Assoc.*, 174 Ga. App. at 253 (3).

2. Surles maintains that the trial court erred in entering any judgment against him because he did not receive sufficient notice that the trial would commence on December 13, 2004. "[A] judgment or order based upon a trial or hearing entered against a party without notice to that party of the trial or hearing is subject to a motion to set aside where the lack of notice appears on the face of the record." (Punctuation and footnote omitted.) *American Mobile Imaging v. Miles*, 260 Ga. App. 877, 878 (581 SE2d 396) (2003). See OCGA § 9-11-40 (c) (1). The burden is on the party alleging lack of notice to prove it. *Trice v. Howard*, 130 Ga. App. 895 (2) (b) (204 SE2d 808) (1974). Surles failed to meet this burden in the instant case.

The record reflects that on February 25, 2004, the trial court entered its scheduling order stating that the court anticipated that the matter would be set for trial on or about December 6, 2004. Subsequently, on November 18, 2004, the trial court entered its order placing case on trial calendar and requiring a pre-trial order, which ordered the parties to appear before the court on December 6, 2004 and informed them that the "[n]otice of trial will also be published in

---

[5] It is true, as Surles asserts, that under OCGA § 9-12-7 a trial court lacks authority to substantively modify or revise a verdict after it has been received and the jury dispersed. See *Parrish Bakeries of Ga. v. Wiseman Baking Co.*, 104 Ga. App. 573, 575 (122 SE2d 260) (1961). Here, however, the trial court questioned the jury on the record *prior to disbursal* and then construed the otherwise ambiguous verdict in light of the jury's intent based on that questioning. This, the trial court was permitted to do. See *American Petroleum Products*, 231 Ga. App. at 8 (4). See also *Turley v. Turley*, 244 Ga. 808, 809 (262 SE2d 112) (1979) (in cases involving ambiguous jury verdicts, OCGA § 9-12-7 does not prevent the trial court from examining the trial record to determine whether it "plainly appear[s] upon the face of the record" what the jury intended) (citation and punctuation omitted); *Ballard v. Turner*, 147 Ga. App. 584, 586 (3) (249 SE2d 637) (1978) ("The judge may poll the jury in a proper case as to the intendment of its verdict.") (citation omitted).

the Fulton County Daily Report. No other notices will be provided by the [c]ourt." The December 6, 2004 trial calendar first appeared in the Fulton County Daily Report on November 11, 2004, was published again on December 1, and was published daily for the duration of the two-week trial calendar beginning on December 6. Surles and his Colorado counsel were listed in the notice.[6] The notice indicated that the case was number 17 on the trial court's December 6 trial calendar, stated that the calendar would last for two weeks, and warned that "all parties must be present for the call of this calendar and [be] ready to proceed." At the December 6 calendar call (which neither Surles nor his Colorado counsel chose to attend), the trial court ordered the parties to return on December 13 at 9:00 a.m. for a pre-trial conference and informed them their case "would be [that] week." Cornell's counsel subsequently e-mailed Surles and his Colorado counsel and informed them of the pre-trial conference and that the case "[would] go to trial shortly thereafter."

Given this record, it is clear that Surles had more than sufficient notice of the trial date. The general rule is that the notice requirement is met "by publication of the court calendar in the Fulton County Daily Report," as was done in the present case. (Citation omitted.) *Spyropoulos v. John Linard Estate*, 243 Ga. 518, 518-519 (255 SE2d 40) (1979). Nevertheless, while conceding that he received the February 25 scheduling order, Surles argues that he never received the November 18 order placing case on trial calendar. But, the order itself listed Surles and his Colorado counsel as persons to whom the order was being sent, and there is a presumption that the order was accurate in this regard. See *Blue Stone Lofts v. D'Amelio*, 268 Ga. App. 355, 358 (601 SE2d 719) (2004); *Porter v. Tissenbaum*, 247 Ga. App. 816, 818 (3), n. 6 (545 SE2d 372) (2001); *Trice*, 130 Ga. App. at 895 (2) (b). In any event, it is clear that Surles was aware of the trial calendar, as indicated in a December 3 e-mail by his Colorado counsel noting that the case was number 17 on the trial calendar and thus would be unlikely to go to trial on December 6. Moreover, additional notice was given via the e-mail sent by Cornell's counsel to Surles and his Colorado counsel following their failure to appear at the December 6 calendar call, which, as noted, stated explicitly that they were to be in court on December 13 and that trial would occur "shortly thereafter." Under these circumstances, Surles clearly has no basis for contending that he received inadequate notice of the trial date.

---

[6] Prior to trial, the trial court treated Surles as a pro se litigant because no counsel had entered an appearance on his behalf in the case. Nevertheless, it is clear from the record that Surles was assisted during this period and received legal advice from Scott McComas, a Colorado attorney. Shortly before trial, Surles retained different Georgia counsel to represent him during the trial proceedings.

3. Surles asserts that the trial court erred in entering a judgment awarding punitive damages against him for three separate reasons. We will address each in turn.

(a) Citing to *Chupp v. Henderson*, 134 Ga. App. 808, 812 (3) (216 SE2d 366) (1975), Surles contends that when multiple defendants are sued as joint tortfeasors, punitive damages cannot be awarded unless the jury finds all of the defendants liable for punitive damages. In the instant case, the jury found Beaudreault, Sperling, Hasco Financial, and Surles jointly and severally liable for fraud, but then found only Beaudreault, Sperling, and Surles liable for punitive damages. Consequently, Surles argues that based on *Chupp*, punitive damages could not be awarded against him. Pretermitting whether *Chupp* otherwise would control the outcome here, we conclude that Surles waived any objection he may have had on the asserted ground.

After the jury found Beaudreault, Sperling, Hasco Financial, and Surles jointly and severally liable for fraud, Surles' trial counsel requested that the trial court craft a verdict form for phase two of the trial that listed each defendant separately:

> COUNSEL: Your Honor, I think we discussed this before, but would it not be proper in this verdict form to have each defendant listed?
> COURT: No. Because the next phase is —
> COUNSEL: Your Honor, couldn't a jury come back and say we think punitive damages are proper with respect to this defendant but not that defendant?
> COURT: All right. I think you may have a point. . . . All right. I'm going to break it up. . . . I think a defendant has the right not to be subjected to consideration of punitive damages if there's not a threshold finding. . . .

Surles' trial counsel then requested clarification as to whether the structure of the remaining proceedings would be that the jury would "rule on whether punitive damages are appropriate with respect to each defendant," followed by a separate phase involving additional argument by the specific defendants whom the jury found should have to pay punitive damages. The trial court clarified that after the jury ruled in phase two, there would not only be additional argument, but the presentation of additional evidence and jury instructions in phase three. Surles' trial counsel responded, "Thank you, Your Honor." The trial court thereafter provided the jury with a verdict form that listed each defendant separately and asked the jury to specify whether punitive damages were warranted as to each individual defendant who had been found liable for fraud.

After the jury returned a verdict finding that Beaudreault, Sperling, and Surles were liable for punitive damages, but not Hasco Financial, Surles' trial counsel did not object to proceeding to a third phase where the jury would assess the amount of punitive damages as to those three remaining defendants. Subsequently, in phase three, the trial court explicitly instructed the jury that they could apportion their award of punitive damages "among persons who are liable" and provided the jury with a verdict form that listed each defendant separately. All the parties agreed to the trial court's jury charge and the verdict form in phase three, and Surles' trial counsel did not raise an objection at any point.

Based on this record, it is clear that Surles failed to object and in fact was actively involved in allowing the jury to reach the result about which he now complains. It follows that Surles has waived any objection to the manner in which the punitive damages were awarded. See *Robinson v. Ellis*, 268 Ga. App. 52, 54 (1) (601 SE2d 426) (2004). See also *KDS Properties*, 234 Ga. App. at 397 (1) (concluding that "[t]he parties by their conduct and silence acquiesced in the ruling of the trial court and in the dismissal of the jury without its reconsideration of the verdict. A party cannot complain of a verdict, judgment, ruling, or order that his own trial or post-trial procedure aided in causing.").

(b) Surles next contends that there was insufficient evidence to support how the jury apportioned the punitive damages award. Specifically, Surles argues that "[n]othing in the record supports Sperling being found ten times more responsible than [Surles] and a hundred times more responsible than Beaudreault." We do not agree.

OCGA § 51-12-5.1 (b) provides that

[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Moreover, "[p]unitive damages shall be awarded not as compensation to [the] plaintiff but solely to punish, penalize, or deter a defendant." OCGA § 51-12-5.1 (c). On appeal, we must decide whether the evidence was sufficient under the clear and convincing standard to authorize punitive damages. *Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 32 (7) (640 SE2d 620) (2006).

We conclude that the evidence presented at trial met the clear and convincing standard for punitive damages and was consistent with the jury's apportionment of damages between Beaudreault,

Sperling, and Surles. As previously set out, the evidence supported a finding that the three defendants conspired to defraud Cornell out of its money from the conception of the Colorado Project, successfully implemented their fraudulent scheme, and then actively worked together to cover up the removal of Cornell's money through a calculated pattern of deception. Under these facts, punitive damages plainly were authorized. See, e.g., *Miles Rich Chrysler-Plymouth v. Mass*, 201 Ga. App. 693, 699 (3) (c) (411 SE2d 901) (1991).

Additionally, the record reflects that Sperling ultimately received far more of Cornell's money for his own use than any of the other defendants, and so the jury was entitled to decide that he bore the greatest culpability. In turn, based on the August 14, 2003 letter written by Surles that he faxed to Beaudreault, the jury was entitled to find that it was Surles who first suggested the fraud scheme to Beaudreault, and, therefore, that Surles was more culpable than Beaudreault. Hence, the evidence supported the jury's finding that Surles was less culpable than Sperling but more culpable than Beaudreault, and its decision to apportion the punitive damages accordingly. And, in arriving at how to express these different degrees of culpability in mathematical terms, the jury was not bound by any specific formula; instead, the matter was to be "determined according to the enlightened conscience of [the] fair and impartial jury." (Footnote omitted.) *Scott v. Battle*, 249 Ga. App. 618, 621 (3) (548 SE2d 124) (2001). Thus, we conclude that the jury's apportionment of the punitive damages was supported by sufficient evidence.

(c) Finally, Surles argues that there was insufficient evidence to support an aggregate punitive damages award in excess of $250,000.[7] We agree.

OCGA § 51-12-5.1 (g) "limits punitive damages to a maximum of $250,000 for any tort action, unless the trier of fact finds that the defendant acted, or failed to act, with the specific intent to cause harm." (Punctuation and footnote omitted.) *Quay v. Heritage Financial*, 274 Ga. App. 358, 360 (1) (617 SE2d 618) (2005). Moreover,

$250,000 is the maximum amount of money that the finder of fact may award to *any one plaintiff* as punitive damages — regardless of the number of defendants, and regardless of the number of theories of recovery arising out of the same transaction, occurrence, or series of transactions or occurrences.

---

[7] Contrary to Cornell's argument, Surles did not waive his ability to raise his sufficiency of the evidence argument on appeal. See *Quay v. Heritage Financial*, 274 Ga. App. 358, 361 (1) (617 SE2d 618) (2005).

(Punctuation and footnote omitted; emphasis in original.) *Bagley v. Shortt*, 261 Ga. 762, 763 (4) (410 SE2d 738) (1991).

Because the jury found that none of the defendants had acted with the specific intent to cause harm, the trial court reduced the punitive damages award against Sperling to $250,000. The trial court, however, left intact the punitive damages awards of $12,937 against Beaudreault and $129,375 against Surles. This was error. In light of the jury's determination regarding specific intent, the trial court should have limited the *total* punitive damages award to $250,000, and then should have apportioned that amount among the three defendants using the same ratio that had been devised by the jury in its original apportionment of punitive damages. See generally *Sims v. Heath*, 258 Ga. App. 681, 688-689 (8) (577 SE2d 789) (2002). Consequently, the judgment against Surles can be affirmed only on the condition that, within ten days from the date that the remittitur of this Court is made the judgment of the trial court, Cornell agrees to strike the punitive damages award against Surles in excess of his properly apportioned share of a total punitive damages award of $250,000; otherwise, the award of punitive damages against Surles is reversed.[8] See *Quay*, 274 Ga. App. at 361 (1); *Sims*, 258 Ga. App. at 688-689 (8).

*Judgment affirmed on condition. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MARCH 13, 2008.

*Kaufman, Miller & Sivertsen, Robert J. Kaufman, Jordan B. Forman*, for appellant.
*King & Spalding, Nolan C. Leake*, for appellee.

---

[8] Because neither Beaudreault nor Sperling have appealed from the judgment in this case, the punitive damages awards entered against each of them are unaffected by our decision in this appeal.